866 So.2d 899 (2004)
STATE of Louisiana
v.
Romalis A. HARTWELL.
No. 03-KA-1214.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 2004.
*901 Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Appellant.
Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Appellate Counsel, Thomas J. Butler, Counsel of Record on Appeal, Cameron Mary, Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
The Defendant, Romalis Hartwell, appeals his two armed robbery convictions and sentences. We affirm and remand.
On September 4, 2002, the Defendant was charged with two counts of the armed robbery of Fay Phillips (Phillips) and Tena Foster (Foster), in violation of La.R.S. 14:64. He pled not guilty and filed a motion to suppress the identification. On June 4, 2003, the motion was denied. The next day, trial commenced and a 12 person jury found the Defendant guilty as charged. The Defendant filed a motion for new trial, which was denied. After the Defendant waived sentencing delays, he was sentenced by the trial judge to 35 years imprisonment at hard labor on each count, without benefit of parole, probation or suspension of sentence, to be served concurrently. Pursuant to La.R.S. 14:64.3, the judge imposed on each count an additional five years imprisonment, without benefit of parole, probation or suspension of sentence, to be served concurrently with each other, but consecutively to the 35-year sentence.
On the afternoon of June 21, 2002, Foster and Phillips were working at the Golden Beauty Supply on Ames Boulevard in Marrero, Louisiana when a man entered the shop. Foster, the manager, testified that the man, whom she had never seen before, entered the shop after she let him in with the store's automatic buzzer. After the other customers left the store, the Defendant put his hand under his shirt and approached Foster. He pulled a sun *902 visor down over his face, said this was a robbery and to "Get on the f_______ floor." The Defendant struck the cash register until it opened. He removed approximately $200 to $300 in cash from the register, but wanted to know where the rest of the money was kept. Foster told him it was in the floor safe. The Defendant became enraged, placed a gun to Foster's head and demanded the money from the safe. He said that "there was supposed to be a safe in the back." Foster said that the only safe she knew of was the floor safe, to which she did not have keys. The two women were ordered to kneel on the floor with their hands behind their heads. Foster testified that she believed they were about to die and that she prayed as she knelt. Eventually, Foster heard the door open and close. At that point, she discovered that the robber had left the store. Foster testified that both ladies' purses, earrings, jewelry, a "lot of the clippers and everything off the back shelf" had been stolen.
Detective John Carroll of the Jefferson Parish Sheriff's office went to the scene and met with Phillips and Foster. Foster described the perpetrator as wearing a blue Hawaiian shirt, shorts, a blue "rag" on his head, and a sun visor. The detective canvassed the neighborhood for suspects, but did not find anyone matching the description.
Troy Millro (Millro) testified that the Defendant approached him on the day of the robbery and asked if he wanted to buy some clippers that were still in the package. Millro said that he declined because he did not have the money. The Defendant asked him to drive him to someone else's house, where that person was going to purchase the clippers. Millro agreed, but told the Defendant that he wanted to bring his fiancée, Tiffany Carter (Carter), to their house first. When the three reached the house, the Defendant told Millro that he needed to go into Millro's backyard. Millro followed the Defendant to an area where Millro and Carter stored clothes. The Defendant pulled out a plastic bag containing credit cards, Medicaid cards, and other personal effects. The Defendant then told Millro that he had "robbed them b_______."
After Millro found another bag with similar contents, he took the two bags inside and told Carter what had just happened. She then telephoned Foster's home and spoke to Foster's son, who said that Foster was at the Golden Beauty Supply where she worked. Carter and Millro went to the shop and returned Foster's personal effects.[1] Foster copied the license plate of Carter's car and gave it to Detective Carroll.
After further investigation, Detective Carroll discovered that the car was registered to Carter. Carter and Millro then went to the detective bureau where they related the events that led to the return of Foster's belongings. Millro also identified the Defendant's photograph from a photographic lineup as the person who attempted to sell him the clippers. Thereafter, Detective Carroll went to the Defendant's residence and he consented to a search of his house. The Defendant's girlfriend, Rochella Sommersville (Sommersville), consented to a search of her vehicle that was parked at the residence. During the automobile search, Detective Carroll found a blue Hawaiian shirt in the trunk.
According to Detective Carroll, both Foster and Phillips positively identified the Defendant from a photographic lineup. At trial, Foster positively identified the Defendant as the perpetrator and the Hawaiian *903 shirt as the one worn by the Defendant during the robbery.
The Defendant sought to establish an alibi defense. He claimed that, on the day of the robbery, after work at Avondale, Sommersville picked him up from work at approximately 3:00 p.m. and they went to see a movie. However, the show they wanted to see was sold out, so they went to visit friends, Keshawn Harris (Harris) and Timothy Vicks (Vicks). All of these witnesses testified that the Defendant and Sommersville were at the Harris' and Vicks' apartment from approximately 4:00 p.m. until 6:30 p.m.
Sommersville testified that she had worked at the Golden Beauty Supply until the end of May 2002. She quit the job because she discovered that she was pregnant. Sommersville said that the owner told her she could have her job back after the baby was born. However, Sommersville also testified inconsistently that she found out on June 21, 2002, the day of the robbery, that she was pregnant. According to Sommersville, it was this discovery that prompted a clear memory of the day's events. The Defendant testified that Sommersville found out that she was pregnant a few days before June 21, 2002. The Defendant said he had been to the Golden Beauty Supply many times when Sommersville worked there.
On appeal, the Defendant contends that the State failed to present sufficient evidence to uphold the convictions, and that the trial judge erred in denying the defense motion for new trial. He also contends that the sentences are excessive.
INSUFFICIENT EVIDENCE
The Defendant first argues that the evidence was insufficient to support the conviction because the State failed to prove his identity as the perpetrator beyond a reasonable doubt.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Johnson, 01-1362, pp. 7-8 (La.App. 5th Cir.5/30/02), 820 So.2d 604, 608, writ denied, 02-2200 (La.3/14/03), 839 So.2d 32.
The rule as to circumstantial evidence is "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the Defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181, pp. 4-5 (La.App. 5th Cir.6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. When the key issue in a case is the Defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification in order to meet its burden of proof. State v. Neal, 00-0674, p. 11 (La.6/29/01), 796 So.2d 649, 658, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Payne, 01-742, p. 7 (La.App. 5th Cir.12/26/01), 806 So.2d 768, 771.
The Defendant here was convicted of two counts of armed robbery, which is defined by La.R.S. 14:64 as follows:
"A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use *904 of force or intimidation, while armed with a dangerous weapon."
In support of his argument, the Defendant asserts that no physical evidence, such as fingerprints, linked him to the crime. Detective Carroll acknowledged that the fingerprints lifted from the crime scene did not match either the Defendant or Millro. However, the officer testified that it was unusual for fingerprint evidence to connect a perpetrator to the crime. As an example, Detective Carroll stated that he had not obtained suspect identifications out of the more than 200 cases that he had been assigned in the previous year. Detective Carroll explained that in two of the 200 cases, positive matches were found, but turned out to be customers, not suspects.
The thrust of the Defendant's argument is that the jury should not have believed the testimony of Foster or Millro. According to the Defendant, Millro's testimony was incredible because he lied to Detective Carroll and the jury. The Defendant contends that Millro denied that Detective Carroll had read him his rights when questioned, yet Detective Carroll testified that he had read both Millro and Carter their rights. Detective Carroll acknowledged that he had initially considered both of them to be suspects, but that they were not under arrest. Rather, he had informed them that they were under investigation for the armed robbery. Additionally, Detective Carroll testified that he began believed that Millro was telling the truth and excluded him as a suspect in the robbery.
The Defendant claims that the jury should not have believed Foster because she did not notice his distinguishing characteristics, such as his gold teeth and his "goatee." However, Foster positively identified the Defendant from a photographic lineup and at trial. She stated that she had the opportunity to view the Defendant before the robbery while he looked at items in the store. Further, Foster was certain that she had correctly identified the Defendant as the perpetrator. She also identified the shirt found in the Defendant's girlfriend's car as the one worn by the Defendant.
The Defendant also claims that the jury should have believed his alibi witnesses. However, it is noted that Sommersville's testimony was internally inconsistent because she claimed that she had left Golden Beauty Supply in May 2002 because she was pregnant, but testified that she discovered she was pregnant on June 21, 2002, the day of the robbery. The Defendant's and Sommersville's testimony also conflicted. She claimed that she discovered she was pregnant on the day of the robbery, while the Defendant claimed it was a few days before the robbery.
The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witness. Thus, the reviewing court may impinge on the fact-finder's discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Harris, 02-1589, p. 4 (La.5/20/03), 846 So.2d 709, 713, citing, State v. Mussall, 523 So.2d 1305, 1310 (La.1988). By returning the guilty verdict, the jury obviously believed the testimony of the State's witnesses. After reviewing the record, we find that rational jurors, viewing the evidence in the light most favorable to the prosecution, could have concluded beyond a reasonable doubt that the Defendant was guilty as charged. Thus, we find that the evidence was sufficient to convict the Defendant.
NEW TRIAL
The Defendant next contends that the trial judge erred in denying his motion *905 for a new trial, because the trial judge improperly admitted inadmissible hearsay by Detective Carroll that Phillips had positively identified him in a lineup. According to the Defendant, the only evidence that the Defendant robbed Phillips was this inadmissible hearsay testimony. Phillips did not testify at trial.
The grounds for a new trial are provided in La.C.Cr.P. art. 851, in pertinent part:
The motion for a new trial is based on the supposition that an injustice has been done the Defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the Defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
. . . .
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the Defendant may not be entitled to a new trial as a matter of strict legal right.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. La.C.E. art. 801 C. Hearsay evidence is not admissible except as otherwise specified in the Louisiana Code of Evidence or other legislation. La.C.E. art. 802. Testimony that a witness positively identified the Defendant as the perpetrator in a lineup is inadmissible hearsay when the witness does not testify at trial. See, State v. Jones, 94-2244 (La.8/31/94), 642 So.2d 151.[2]
Detective Carroll's testimony that Phillips had positively identified the Defendant from the photographic lineup meets the definition of hearsay. The record does not disclose the reason that Phillips did not testify, although in closing argument, the prosecutor mentioned to the jury that Phillips had been subpoenaed, but that the State could not force her to testify. In any event, the Defendant did not object to Deputy Carroll's testimony at any time before the verdict.
As a general rule, hearsay that is not objected to becomes substantive evidence. State v. Dabney, 02-934, p. 6 (La.4/9/03), 842 So.2d 326, 330; State v. Cho, 02-274, p. 17 (La.App. 5th Cir.10/29/02), 831 So.2d 433, 447, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213. However, if the sole evidence of guilt rests entirely on unreliable, inadmissible hearsay evidence to which there was no objection, the evidence may be insufficient to convict. See, State v. Lubrano, 563 So.2d 847 (La.1990).
In this case, Detective Carroll's hearsay testimony did not constitute the sole evidence that the Defendant committed the armed robbery. Foster testified that the Defendant accomplished the robbery with a gun and took purses belonging to Foster and Phillips. Further, Millro testified that the Defendant told him that he had "robbed them b_______." Additionally, after the Defendant made his remark Millro found behind his house personal belongings in two separate bags, one of which contained Foster's effects.
In State v. Arbuthnot, 367 So.2d 296 (1979), the Louisiana Supreme Court reversed *906 the Defendant's conviction on the basis of a police officer's hearsay testimony regarding a non-testifying witness' positive identification of him. Although another eyewitness identified the defendant, the Louisiana Supreme Court reasoned that the hearsay description of the non-testifying witness improperly bolstered the state's identification testimony by its only identification witness. Id. at 298-299. The present case is distinguishable from Arbuthnot. Millro's testimony constituted independent evidence of the Defendant's guilt apart from Foster's testimony.
Additionally, the erroneous admission of hearsay testimony may be harmless error and is therefore subject to a harmless error analysis. See, State v. Wille, 559 So.2d 1321, 1331 (La.1990). The test for harmless error is whether the guilty verdict actually rendered was surely unattributable to the error. State v. Johnson, 94-1379, p. 14 (La.11/17/95), 664 So.2d 94, 100; Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
In Wille, the Louisiana Supreme Court determined that an officer's hearsay testimony regarding two accomplices' statements that inculpated the defendant was harmless error when it was cumulative of other evidence including the defendant's confession. Wille, 559 So.2d at 1328-1333. Considering the unwavering testimony of Foster, combined with Millro's testimony, we find that Detective Carroll's hearsay testimony was harmless error, as the "verdict actually rendered was surely unattributable" to the hearsay testimony.
EXCESSIVE SENTENCE
The Defendant next contends that his sentences are constitutionally excessive because he is a first offender and because the victims were not hurt during the encounter.
Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8; La. Const. of 1974, Art. I, § 20; State v. Richmond, 98-1015, p. 8 (La.App. 5th Cir.3/10/99), 734 So.2d 33, 38. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Richmond, 98-1015 at 8, 734 So.2d at 38; State v. Lobato, 603 So.2d 739, 751 (La. 1992). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. However, the sentence will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Richmond, 98-1015 at 8, 734 So.2d at 38. The trial judge is afforded wide discretion in determining a sentence and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4 D; Richmond, 98-1015 at 8, 734 So.2d at 38.
The penalty for armed robbery is imprisonment at hard labor for not less than ten years and not more than 99 years, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64 B. Prior to sentencing, the State invoked the firearms sentencing provision of La.R.S. 14:64.3. That statute provides for an additional five years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence to be served consecutively to the sentence when an offender commits an armed robbery with a firearm.
Before imposing sentence, the trial judge considered that the Defendant was a first felony offender and was 25 years old at the time of sentence. The judge also observed that the Defendant's actions *907 were "horrible," and recalled Foster's testimony that she was afraid she would die during the robbery. Thereafter, the trial judge sentenced the Defendant to two concurrent terms of 35 years at hard labor without benefit of parole, probation, or suspension of sentence, plus an additional five years without benefits to be served concurrently with each other, but consecutively to the 35 year sentence.
Similar sentences for armed robbery have been upheld in other cases. In State v. Augustine, 555 So.2d 1331, 1332 (La. 1990), the Louisiana Supreme Court found that a prison term of 40 years for an 18-year-old first offender convicted of armed robbery was not constitutionally excessive. In State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court stated that sentences of 35 to 50 years have been found to be acceptable for first offenders convicted of armed robbery, citing Augustine and State v. Thomas, 98-1144, p. 2 (La.10/9/98), 719 So.2d 49, 50.
Armed robbery is a serious offense against the person. See, State v. Francois, 01-807, p. 5 (La.App. 5th Cir.4/10/02), 817 So.2d 213, 216. Considering the circumstances surrounding the robbery and that this sentence is in the range approved by the Louisiana Supreme Court for first armed robbery offenders, we find that the sentence is not excessive.
PATENT ERROR
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198.
The record reflects that the minute entry for the final day of trial is dated June 4, 2003, rather than June 5, 2003. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, the trial court is ordered to correct the minutes and the case is remanded for that purpose.
Accordingly, the Defendant's convictions and sentences are hereby affirmed. The case is remanded for correction of the minutes.
AFFIRMED AND REMANDED.
NOTES
[1] The record does not indicate whether Phillips' belongings were also returned.
[2] In Jones, the witness was deceased and the State sought to introduce his identification of the defendant through other observers at the lineup. The Louisiana Supreme Court held that the observers' testimony was inadmissible hearsay and should be suppressed.