MARION F. EDWARDS, Chief Judge.
 

 12Pefendant/appellant, Devon Allen (Allen), appeals his conviction and sentence on a charge of armed robbery with a firearm in violation of La. R.S. 14:64 and La. R.S. 14:64.3.
 
 [1]
 
 For reasons that follow, we affirm.
 

 Allen entered a plea of not guilty to the charge and, after initial defense motions to suppress were denied, the matter went to trial before a twelve-person jury. On
 
 *158
 
 April 9, 2009, the jury found Allen guilty as charged. On May 8, 2009, Allen was sentenced to ten years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence pursuant to La. R.S. 14:64. Allen was also sentenced to an additional five years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, to be served consecutively, for the use of a firearm pursuant to La. R.S. 14:64.3. After sentencing, Allen made an oral motion for appeal, which was subsequently followed up by the filing of a written motion for appeal. The appeal motion was granted on June 25, 2009.
 

 J¿FACTS
 

 On the evening of September 23, 2007, Rose Madison (Ms. Madison) was making a pizza delivery for Domino’s Pizza in the Bannerwood Drive area of Gretna, Louisiana. When Ms. Madison observed three males standing near the delivery location on Grovewood Drive, she stopped the vehicle and opened the window to ask if they had ordered a pizza. When they responded affirmatively, Ms. Madison pulled over and parked the car. She walked around to the passenger side of the vehicle and opened the door. One of the men started digging in his pockets, as if he were retrieving money or a wallet. Ms. Madison reached into the vehicle to get the pizza. She turned around to find that one of the men was holding a gun to her face. The man demanded the money and the pizza.
 

 Ms. Madison recognized the man with the gun, later identified as Edwardo Flores (Flores), as a classmate from Helen Cox School. She said to Flores, “Bra, why you robbing me? We went to school together. I know you.” While Flores held the gun to her face, Allen searched her car and the third man, who was holding a baseball bat, stood off to the side. That man was later identified as Troy Dent (Dent).
 

 Allen took Ms. Madison’s cigarettes and wallet, including her driver’s license and $400 cash, from the vehicle. Flores told Ms. Madison to empty the pizza bag on the ground, so she opened the bag and poured the contents on the ground. The perpetrators picked up the items from the bag, told Ms. Madison to “get the f&*%,” and ran away. After the perpetrators fled, Ms. Madison locked herself in her vehicle and called the police.
 

 Deputy Johnnie Petit, Jr. of the Jefferson Parish Sheriffs Office arrived at the scene of the crime and took a report. Deputy Petit asked Ms. Madison to provide a description of the perpetrators, which she did at the scene, then requested 14that she follow him to the Domino’s Pizza on Lapalco to complete the report and obtain the contact number of the individual who had ordered the pizza. As Ms. Madison followed Deputy Petit down Banner-wood, she observed a group of men playing basketball in the street and recognized two members of the group as perpetrators of the robbery. Ms. Madison flashed her lights, and Deputy Petit pulled over. Ms. Madison described the men to Deputy Pet-it, and identified Flores as the perpetrator with the gun and Dent as the one with bat. Deputy Petit told Ms. Madison to park around the corner, and he returned to Bannerwood to investigate.
 

 Deputy Petit detained Flores and Dent, who matched the descriptions provided by Ms. Madison. Another officer escorted Ms. Madison in his police vehicle to the location where Flores and Dent had been detained, and she was given an opportunity to confirm her prior identification of the suspects. The officers used a vehicle spotlight to illuminate Flores and Dent, who were standing next to Deputy Petit’s vehicle, and Ms. Madison positively identified
 
 *159
 
 the two as perpetrators of the robbery. Flores and Dent were subsequently arrested and transported to the Rivarde Juvenile Detention Center.
 

 Approximately two and a half weeks later, on October 10, 2007, Ms. Madison was driving in Gretna when she observed Allen walking down Wall Boulevard. She pulled over into a parking lot near Oakdale Playground, called 911, and advised the police that she had just seen one of the perpetrators who had robbed her a couple of weeks earlier. When Allen neared her vehicle, Ms. Madison rolled down the car window and said, “You that bastard that robbed me.” According to Ms. Madison’s testimony, Allen looked shocked and “was going underneath his shirt” when the police approached. Allen said, ‘We should have shot you when we robbed you,” then ran.
 

 UAs Sergeant Matthew Bonura of the Jefferson Parish Sheriffs Office, Second District Patrol, drove into the playground parking lot, he observed Allen running away. Ms. Madison said, “That’s him, that’s the person who robbed me,” and Sergeant Bonura gave chase on foot across the baseball field of the playground. Sergeant Bonura notified other units in the area that he was on foot pursuit of a suspect, and several units responded via radio. Allen jumped over a high fence, and Sergeant Bonura lost sight of him. Sergeant Bonura described the houses in relation to his location in the playground and directed responding officers via radio to the estimated location of Allen.
 

 Deputy Eric Blanford, who was assigned to the Jefferson Parish Street Crimes Unit at the time of the incident, responded to Sergeant Bonura’s call, which advised that Sergeant Bonura was “in pursuit of a black male wearing a black shirt and black jeans with braids in his hair” and that they were coming across the baseball field. Deputy Blanford entered the neighborhood off of Mount Laurel Drive. He observed a suspect matching Sergeant Bonu-ra’s description (later identified as Allen) in the backyard of a residence located at 668 Taylorbrook Drive and parked his vehicle. Allen, who had a firearm in his hand, was removing his shirt.
 
 [2]
 
 Deputy Blanford identified himself and apprehended Allen. Allen attempted to flee, and a violent struggle ensued as Deputy Blanford tried to handcuff Allen. Once Allen was apprehended, Sergeant Bonura escorted Ms. Madison to the scene of the apprehension, where she positively identified Allen as the person who had robbed her. Allen was arrested, and Deputy Blanford called the Crime Scene Division to take photographs and process the evidence.
 

 | fiSergeant Rodney Naumann of the Jefferson Parish Sheriffs Office, Crime Scene Division, arrived at the residence located at 668 Taylorbrook Drive, where officers had recovered a gun and some T-shirts in the backyard. Sergeant Naumann testified that the weapon offered by the State as evidence was the weapon recovered at the scene of Allen’s apprehension.
 

 Dent, one of the perpetrators identified by Ms. Madison, testified at trial as a witness for the State.
 
 [3]
 
 Dent testified that,
 
 *160
 
 on the evening of September 23, 2007, he, Allen, Flores, Joe Flores (Edwardo Flores’ brother), and a guy named “Slim” were sitting outside in front of Flores’ home when one of the guys suggested that they order a pizza.
 
 [4]
 
 When Joe Flores said, “I don’t have no money, or nobody don’t have no money out here,” Allen asked Flores, “Do you still have the gun?” Flores responded affirmatively, and pulled a small, black gun out of his pocket.
 
 [5]
 
 Allen said, “That’s how we’re going to get it,” and Joe used Slim’s phone to call and order the pizza.
 

 Shortly thereafter, the group cut through a fence in Flores and Joe Flores’ backyard to the street behind their house that ran parallel to Bannerwood. Dent stated that he did not want to go along with the group, but was forced to because Allen threatened to kill his mother or his sister. The men were standing on the corner when a woman in a truck pulled up. The woman stopped and asked the group if they had ordered a pizza. Allen responded affirmatively, reached into his pocket, and pulled out his wallet. The woman opened the back door of her vehicle and leaned down to get the pizza. When the woman turned around, Flores put the |7gun in her face and told her to empty her pockets. The woman said, ‘What are you doing? I went to school with you, Bra.” While Dent stood in back with a baseball bat, Allen searched the woman’s vehicle and took her cigarettes. Dent testified that they did not take anything else from the vehicle.
 

 The group left the scene and cut back through the fence to the front of Flores and Joe Flores’ house. When Dent tried to return to his house, they told him “[n]o, you’re not going inside.” Dent’s mother drove up and asked Dent to help her carry the groceries inside, but they told Dent, “Don’t move.” Dent suspected that they did not want him to go inside because they thought he “might call the police or rat, or go tell [his] mom or something,” so Dent did not help his mother with the groceries. The group was playing basketball when the police arrived. Flores and Dent were identified by Ms. Madison and arrested shortly thereafter.
 

 In direct contradiction to the testimony offered by Dent, Eric Cado (Cado), a friend of Flores and Joe Flores, testified that he was playing basketball with Flores, Dent, and Joe Flores on the evening of September 23, 2007, when the police arrived and arrested Flores and Dent. Cado testified that he did not see Allen at all that day, did not see Flores with a gun, and did not see Dent with a baseball bat. He did not observe Flores or Joe Flores using a cell phone or ordering a pizza, and he did not see a pizza delivery person deliver a pizza. Finally, Cado testified that he had no knowledge of an armed robbery that occurred that night.
 

 Similarly, Joe Flores testified that, on the night of September 23, 2007, he, Flores, Dent and Cado (also known as “Slim”) were hanging out on the porch and playing basketball. While they were playing basketball, the police arrived, searched them, and handcuffed Flores and Dent. The officer said that Flores and Dent matched the description of two suspects that had just committed an armed robbery. Joe Flores testified that he did not see anyone order a pizza or make a | sphone
 
 *161
 
 call, did not see a pizza delivery person, did not see anyone with a gun or a baseball bat, and did not see anyone with cigarettes. Joe Flores further testified that he did not see Allen that day. Finally, Joe Flores stated that the four of them were searched, but the officer did not find a gun, a bat, a wallet, a pizza, or cigarettes on any of them. Both Cado and Joe Flores testified that Flores is not a violent person.
 

 LAW AND ANALYSIS
 

 Allen assigns one error for our review in this appeal. Allen argues that the State failed to present sufficient evidence to uphold the conviction. Allen notes that two witnesses testified that he was not present in the area when Ms. Madison was robbed. Allen further contends that the testimony offered by Dent is unreliable because “he received a sweetheart deal for making the State’s case, provided two different versions of the events to the police and yet a third story at trial during his testimony, and his testimony was in opposition to the State’s only other fact witness, Rose Madison.” Finally, Allen asserts that there is a reasonable probability that Ms. Madison misidentified him as the perpetrator. In conclusion, Allen argues that the conviction should be set aside.
 

 The State responds that the jury obviously gave credence to the testimony offered by Ms. Madison and Dent regarding Allen’s involvement in the robbery and, as permitted, disregarded the testimony offered by Cado and Joe Flores. The State further asserts that Dent’s testimony and second statement were consistent with Ms. Madison’s testimony. Moreover, the State asserts that Ms. Madison positively identified Allen as the person who robbed her.
 

 The constitutional standard for testing the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime |flbeyond a reasonable doubt.
 
 [6]
 
 Under the
 
 Jackson
 
 standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.
 
 [7]
 
 Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt.
 
 [8]
 

 When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.
 
 [9]
 
 It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence absent impingement on the fundamental due process of law.
 
 [10]
 
 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual
 
 *162
 
 conclusion.
 
 [11]
 

 In the present case, Allen was charged with armed robbery in violation of La. R.S. 14:64 and La. R.S. 14:64.3. To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
 
 [12]
 
 A gun used in connection with and at the scene of a robbery is as a matter of law a | mdangerous weapon.
 
 [13]
 
 Additionally, in an armed robbery prosecution, the act of pointing a gun at a victim constitutes a use of force or intimidation.
 
 [14]
 

 Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator.
 
 [15]
 
 All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
 
 [16]
 
 A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending on the mental element proved at trial. Only those persons who knowingly participate in the planning or execution of a crime are principals.
 
 [17]
 

 In the instant case, the jury was presented with the victim’s testimony, the testimony of Dent (one of the perpetrators of the robbery), the testimony of Deputy Petit (the responding police officer), and the testimony of the three officers who were involved in the apprehension of Allen on October 10, 2007. The jury also heard testimony from two defense witnesses. Additionally, Ms. Madison positively and emphatically identified Allen as one of the perpetrators.
 

 Though the testimony offered by Cado and Joe Flores is contradictory to that of the State’s witnesses, the jurors clearly found the testimony of the victim and Dent regarding the incident to be more credible. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due | n process of law.
 
 [18]
 
 The jury was presented with, and clearly accepted Ms. Madison’s testimony, as well as Dent’s corroborating testimony and that of the responding officers, that Allen and Flores, while armed with a gun, robbed her by use of force or intimidation.
 

 Based on the foregoing, we find the evidence, viewed in a light most favorable to the State, was sufficient to establish
 
 *163
 
 that defendant was guilty of the charged offense beyond a reasonable doubt.
 

 ERROR PATENT DISCUSSION
 

 Allen requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920 regardless of whether defendant makes such a request. The review reveals no errors patent in this case.
 

 Accordingly, Allen’s conviction and sentence are affirmed.
 

 AFFIRMED
 

 [1]
 

 . By the same bill of information, Troy Dent, a juvenile, and Edwardo Flores, a juvenile, were charged as co-defendants. Flores was tried with Devon Allen. Troy Dent testified against Allen and Flores. At the time of trial, Dent had entered into a plea agreement with the State, pursuant to which he pled guilty to the lesser charge of Conspiracy to Commit Armed Robbery and for which he expected to receive a sentence of probation for a term of five years.
 

 [2]
 

 . Deputy Blanford testified that the firearm recovered from Allen was a black revolver with a wooden handle and identified the weapon offered by the State as evidence as the weapon defendant was holding when he was apprehended.
 

 [3]
 

 . Dent gave a statement on September 28, 2007, that was inconsistent with his trial testimony. In his September 28, 2007 statement, Dent stated that he had no knowledge of or involvement in the September 23, 2007 robbery of Ms. Madison. Dent gave another statement on January 29, 2009, in which he admitted his involvement in the robbery. The
 
 *160
 
 January 29, 2009 statement implicated defendant and Flores in the robbery and was consistent with Dent’s trial testimony.
 

 [4]
 

 . Flores and Joe Flores live next door to Dent.
 

 [5]
 

 . Dent identified the weapon offered by the State as evidence as the weapon that Flores pulled out of his pocket during the robbery.
 

 [6]
 

 .
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
 

 [7]
 

 .
 
 State v. Jones,
 
 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240 (citing
 
 State v. Cho,
 
 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 442,
 
 writ denied,
 
 02-2874 (La.4/4/03), 840 So.2d 1213).
 

 [8]
 

 .
 
 Id.
 
 at 240.
 

 [9]
 

 .
 
 State v. Bailey,
 
 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55,
 
 writ denied,
 
 04-1605 (La. 11/15/04), 887 So.2d 476,
 
 cert. denied,
 
 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005).
 

 [10]
 

 .
 
 Id.
 

 [11]
 

 .
 
 State v. Caffrey,
 
 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198,
 
 writ denied,
 
 09-1305 (La.2/5/10), 27 So.3d 297.
 

 [12]
 

 . La. R.S. 14:64(A).
 

 [13]
 

 .
 
 State v. Ragas,
 
 07-3 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 271,
 
 writ denied,
 
 07-1440 (La. 1/7/08), 973 So.2d 732,
 
 cert. denied,
 
 -U.S.-, 129 S.Ct. 55, 172 L.Ed.2d 56.
 

 [14]
 

 .
 
 State v. Wickem,
 
 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 966,
 
 writ denied,
 
 00-1371 (La.2/16/01), 785 So.2d 839.
 

 [15]
 

 .
 
 State v. Ingram,
 
 04-551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926.
 

 [16]
 

 . La. R.S. 14:24.
 

 [17]
 

 .
 
 State v. Falkins,
 
 04-250 (La.App. 5 Cir. 7/27/04), 880 So.2d 903, 913,
 
 writs denied,
 
 04-2220 (La. 1/14/05), 889 So.2d 266 and 04-2171 (La.5/20/05), 902 So.2d 1045.
 

 [18]
 

 .
 
 State v. Bailey,
 
 875 So.2d at 955.