TERRI F. LOVE, Judge.
b Melik Spencer (“Mr. Spencer”) appeals his convictions and sentences for violation of La. R.S. 14:64 and 14:64.3, armed robbery with a firearm. Mr. Spencer assigns as error that the State failed to present sufficient evidence for the jury to find, beyond a reasonable doubt, that he was guilty of armed robbery with a firearm. Additionally, Mr. Spencer avers that the sentences imposed by the trial court were excessive. We find that in light of Mr. Spencer’s taped confession to police, the testimony of the victims, and their positive identification of Mr. Spencer, the evidence was sufficient to convict Mr. Spencer. Further, we find the sentences imposed in this case are not excessive as they are within the sentencing range and the trial court provided sufficient reasons for the sentences imposed. Accordingly, we affirm the convictions and sentences of Mr. Spencer.

PROCEDURAL HISTORY

In October 2011, Mr. Spencer was charged with three counts of armed robbery with a firearm in violation of La. R.S. 14:64 and 14:64.3. He pled not guilty to all counts at his arraignment. After hearings on motions, the trial court Rdenied Mr. Spencer’s motions to suppress evidence, identification and statement and found probable cause. In January 2013, the trial court granted co-defendant Shane Spencer’s[1] motion to sever defendants, but denied Mr. Spencer’s motion to sever counts. A jury trial was held in March 2013, wherein the jury found Mr. Spencer not guilty on count one and guilty as charged on counts two and three. Thereafter, the trial court sentenced Mr. Spencer to serve thirty-five years at hard labor without benefit of parole, probation or suspension on each count and said sentences to be served concurrently. Pursuant to La. R.S. 14:64.3, the trial court sentenced Mr. Spencer to an additional five years at hard labor without benefit of parole, probation or suspension of sentence on each count and said sentences to be served consecutively to the initial thirty-five year sentences but concurrently to each other. Mr. Spencer’s motion for appeal was granted, and this appeal follows.

FACTUAL BACKGROUND

The events on August 9, 2011, and August 10, 2011, provide the factual background in the present matter.

*820
Testimony of Jason Washington

Jason Washington (“Mr. Washington”) testified that at approximately 6:45 p.m. on August 9, 2011, he was walking on Gentilly Boulevard, near Franklin Avenue, when he was robbed by a man with a gun. The perpetrator took his cell phone and initially, the perpetrator chased after Mr. Washington, when he ran to his home on Verbena Street to call the police. Eventually, the perpetrator gave upland ran off. Mr. Washington stated that there were two other people with the perpetrator, but he was unable get a good look at them as he was focused on the person with the gun. He testified that he was not able to identify the other people involved when the police presented him with a photographic line-up. Mr. Washington stated on cross-examination that he had never seen Mr. Spencer before.

Testimony of Officer Tliaddeus Williams

On August 9, 2011, New Orleans Police Officer Thaddeus Williams (“Officer Williams”) responded to a call of armed robbery with a gun at 2766 Verbena Street. The officer met with the victim, Mr. Washington, who stated that he was robbed in the 4800 block of Gentilly Boulevard. The victim stated he was chased from the location of the robbery and returned to his home. Mr. Washington told the officer that the perpetrator took his cell phone. Officer Williams stated that the victim described the perpetrator as an African-American male, between the ages of sixteen and seventeen, with a light complexion, slim build and wearing a white shirt and dark blue pants.

Testimony ofNgui Dang

On August 10, 2011, Ngui Dang (“Ms. Dang”) was working at a laundromat at 8964 Old Gentilly Road. After lunch, a man, with a covering over his face and holding a gun, came in through the back door of the building. He put a bag on the counter and demanded money. Ms. Dang then put money from the laundromat in the bag. Taking the bag filled with money, the man ran off. Ms. Dang stated that | ¿she was so nervous as a result of the encounter that she called a friend who then called the police. At trial, she identified the tape of her friend calling thé police. Although Ms. Dang met with the police after the incident, she testified that she could not give a description of the perpetrator because of the cover over his face. She stated she could only see his eyes. At trial, Ms. Dang could not identify Mr. Spencer as the perpetrator.

Testimony of Dwayne Jacque

Dwayne Jacque (“Mr. Jacque”) testified that on August 10, 2011, he was involved in an argument with his girlfriend, Latricha Houston (“Ms. Houston”), at their home on Ford Street. Mr. Jacque decided to leave and take a ride in his truck. As he walked to his truck, three men ran up behind him. At trial, Mr. Jacque described the men as wearing white t-shirts wrapped around their faces but that they kept falling down. The individuals told him to “give it up.” Mr. Jacque told the men they could take his money out of his pants pocket. One of the men reached into Mr. Jacque’s pocket and took his money as well as keys to Mr. Jacque’s car and house. Mr. Jacque stated at trial that the three men then demanded that Mr. Jacque take them into his house. He refused, telling them that they would have to kill him first because his family was inside the home. The men took his car keys and drove off in his truck.
Mr. Jacque stated that he spoke with the police after the incident. At first, he did not want Ms. Houston to call the police. He stated that he was going to “handle it on his own terms,” but he knew that he would be serving jail time for an *821 | ^unrelated offense[2], and he did not want to leave his family in a difficult situation. Mr. Jacque stated that he was able to identify the suspects in a photographic lineup. He testified that he knew the identity of the suspects and saw Mr. Spencer and his brother standing on their mother’s porch the day after the robbery.

Testimony of Latricha Houston

In August 2011, Ms. Houston lived at 3821 Ford Street with her boyfriend, Mr. Jacque, and her two daughters. On the evening of August 10, 2011, she and Mr. Jacque had been arguing. Mr. Jacque said he was going for a ride and walked out of the house. Ms. Houston testified that she walked out shortly after him to get her wallet out of their vehicle, a 2006 black Chevy Trailblazer. When she walked outside, she saw three men standing behind the truck. She heard Mr. Jac-que say, “You got everything I have.” She stated one of the men demanded that Mr. Jacque take him inside the house. Mr. Jacque refused, stating that they would have to kill him first because his family was inside the house. Ms. Houston testified that at that time she realized that Mr. Jacque was being robbed. She ran back inside when she heard one of the men yell to another to stop her. Ms. Houston was able to run into house and lock the door before the man reached her. He tried to open the door, but was unsuccessful. She then called the police.[3]
At trial, Ms. Houston identified her phone call with the 911 operator. Ms. Houston testified that Mr. Jacque did not want her to call the police; he told her | (¡that he would handle the matter in his own way. Ms. Houston stated that she was looking at the men when she went outside. She called the police the next day because she saw the men walking in the neighborhood. Ms. Houston stated during the robbery, the perpetrators had shirts covering their faces, but the shirts kept falling off, exposing their faces. She identified Mr. Spencer in a photographic lineup as one the perpetrators. She stated she was not forced or coerced into making an identification. She testified that she knew the perpetrators as they were friends with her son. She stated that she was absolutely positive of her. identification.

Testimony of Detective Joseph Caminita

Detective Joseph Caminita (“Detective Caminita”) investigated the armed robbery that occurred on August 10, 2011, in the 3800 block of Ford Street. He interviewed one of the victims, Mr. Jacque, and was on the scene during the recovery of their vehicle, which was recovered at the intersection of Iroquis and Pocahontas Streets. The officer spoke with the victim and obtained descriptions of the perpetrators. Mr. Jacque stated that the three men approached him from the rear and remained behind with the vehicle, with a gun to his head. The perpetrator with ,the gun was an African-American male, light skinned, 5'8" to 5'10", and wearing a white t-shirt, which covered the lower portion of his face, and stone-washed blue jeans. The two other subjects were also wearing white t-shirts and pulled them up to cover the lower portion of their faces; however, the shirts kept falling down. All three perpetrators were in their late teens to early twenties. | .¡Detective Caminita stated that he stayed on the scene until the crime lab technicians arrived. The crime lab technicians processed the scene for fingerprints and took photographs. The case was then transferred to another detective.

*822
Testimony of Detective Christopher La-Borde

Detective Christopher LaBorde (“Detective LaBorde”) investigated the armed robberies that took place on August 9, 2011 and August 10, 2011. He spoke with the responding officers who handled the robbery that occurred on August 9th in the 4300 block of Gentilly Boulevard and read the initial reports. Detective LaBorde developed a few suspects in that area who were possibly involved in the robberies. He obtained photographic lineups, which included Mr. Spencer and his brother, and presented the lineups to Ms. Houston and Mr. Jacque. Ms. Houston identified Shane Spencer, Mr. Spencer’s brother. Mr. Jacque identified Mr. Spencer and Shane Spencer. Detective LaBorde also showed the photographic lineups to Mr. Washington and Ms. Dang. Mr. Washington identified co-defendant Brian Richard (“Mr. Richard”) as the perpetrator, and Ms. Dang could not identify anyone.
The officer then obtained arrest warrants for Mr. Spencer, Shane Spencer and Mr. Richard. Mr. Spencer and his brother were arrested on August 17, 2011, at their residence. A search of Mr. Spencer’s bedroom resulted in the seizure of over one hundred rounds of ammunition, two extra-large t-shirts, brass knuckles, one .22 caliber twenty-four inch rifle, one .38 caliber three inch barrel pistol, five cell phones and a pellet pistol. After Mr. Spencer was arrested, he was taken to the |RThird District Station. Detective LaBorde advised Mr. Spencer of his Miranda rights, and Mr. Spencer gave the officer a statement concerning his involvement in the robberies. The officer identified the taped statement that was played for the jury.
In the taped statement, Mr. Spencer acknowledged that he was present when Brian Richard robbed Mr. Washington. Mr. Spencer stated that he, along with three other men, watched as Mr. Richard pulled a gun on a man and took the man’s cell phone. Mr. Spencer told Detective LaBorde that he had no intent to rob anyone that day, but that Mr. Richard talked about robbing someone and having the group of men watch him rob someone. Mr. Spencer stated that Mr. Richard chased the man after the robbery, and the man ran off. Mr. Spencer indicated that he did not know the victim.
Mr. Spencer also admitted in the taped statement that he was the lookout when Mr. Richard robbed a laundromat on August 10th. He stated that Mr. Richard called and asked him to watch the surroundings for police while he robbed a laundromat. Mr. Spencer explained to Detective LaBorde that Mr. Richard told him that he showed his gun to the woman, and the woman gave him the money. Mr. Spencer indicated that Mr. Richard had a red shoe bag on his back when he came out of the laundromat. Mr. Spencer stated that he and Mr. Richard went back to his house after the robbery.

ERRORS PATENT

A review of the record for patent errors reveals none.

\SUFFICIENCY of evidence

Mr. Spencer argues that the State failed to produce sufficient evidence for the jury to find, beyond a reasonable doubt, that he was guilty of two counts of armed robbery with a firearm.
When reviewing a claim of insufficiency of evidence, the appropriate standard was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court must determine whether the evidence, “viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact *823 that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984). See also State v. Brown, 03-0897 (La.4/12/05), 907 So.2d 1; State v. Veal, 12-0712 (La.App. 4 Cir. 5/1/13), 116 So.3d 779, writ denied, 13-1237 (La.12/2/13), 126 So.3d 498; State v. Batiste, 06-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810. If the State uses circumstantial evidence to prove the elements of the offense, “La. R.S. 15:438 requires that ‘assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.’ ” State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657.
Mr. Spencer was convicted of two counts of armed robbery with a firearm. In order to support this verdict, the State had to prove: “(1) the taking, (2) of anything of value, (3) from a person or in the immediate control of another, (4) by 11tithe use of force or intimidation, (5) while armed with a dangerous weapon.” State v. Robinson, 11-0066, p. 8 (La.App. 4 Cir. 12/7/11), 81 So.3d 90, 95 (citing State v. Carter, 99-2234, p. 31 (La.App. 4 Cir. 1/24/01), 779 So.2d 125, 144.) A gun used in connection with and at the scene of a robbery is as a matter of law a dangerous weapon. State v. Refuge, 300 So.2d 489, 491-92 (La.1974); See also La. R.S. 14:2. Moreover, in the prosecution of armed robbery, “the act of pointing a gun at a victim constitutes a use of force or intimidation.” State v. Allen, 10-430, p. 10 (La.App. 5 Cir. 2/15/11), 62 So.3d 156, 162.
La. R.S. 14:24 states in pertinent part, “[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime, are principals.”
Although La. R.S. 14:24 provides that all persons “concerned in the commission of a crime” are principals, only those persons who knowingly participate in the planning or execution of a crime are principals. “Mere presence at the scene is therefore not enough to ‘concern’ an individual in the crime.” State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427, 428; State v. Quac Tran, 08-1103, p. 10 (La.App. 4 Cir. 8/13/09), 18 So.3d 165, 171.
In order to be convicted as a principal, the State must show that a defendant has the requisite mental intent to commit the crime. State v. Newman, 03-1721, p. 13 (La.App. 4 Cir. 7/7/04), 879 So.2d 870, 878; State v. Harry, 01-2336, p. 7 (La.App. 4 Cir. 6/26/02), 823 So.2d 987, 993. Although factors that can contribute to Inthe finding that a defendant is a principal include “ ‘standing by at the scene of the crime ready to give some aid if needed ... it is necessary that the principal actually be aware of the accomplice’s intention.’ ” State v. Anderson, 97-1301, p. 3 (La.2/6/98), 707 So.2d 1223, 1225; See also State v. Pleasant, 11-1675 (La.App. 4 Cir. 10/17/12), 102 So.3d 247.
Mr. Spencer also contends that the State failed to show beyond a reasonable doubt that he was one of the perpetrators. “ ‘[W]hen the key issue is the defendant’s identity as the perpetrator ... the [S]tate is required to negate any reasonable probability of misidentifieation.’ ” State v. Weary, 03-3067, p. 18 (La.4/24/06), 931 So.2d 297, 311; State v. Kelly, 10-0853, p. 6 (La.App. 4 Cir. 12/12/10), 54 So.3d 1159, 1163.
In such cases, the appellate court examines the reliability of an identification using the five factors set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, which include: “(1) the *824 opportunity of the. witness to view the assailant at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.” State v. Jones, 10-0018, p. 7 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 832 (citing State v. Stewart, 04-2219, p. 6 (La.App. 4 Cir. 6/29/05), 909 So.2d 636, 639); See also State v. Mathieu, 07-0204, p. 16 (La.App. 4 Cir. 2/27/08), 980 So.2d 716, 725.
| i?“The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction.” State v. Wells, 10-1338, p. 5 (La. 4 Cir. 3/30/11), 64 So.3d 303, 306. A factfinder’s decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. State v. James, 09-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996.
In regards to the armed robbery of Ms. Dang at the laundromat, Mr. Spencer admitted in his statement to Detective LaBorde that Mr. Richard asked him to be his lookout while he robbed the store. Mr. Spencer’s confession reveals that he knew Mr. Richard intended to rob the laundromat and willingly participated in the robbery as the lookout. Mr. Spencer told Detective LaBorde that Mr. Richard told him that he showed his gun to the woman, and the woman gave him the money. Mr. Spencer also told the detective that Mr. Richard had a red shoe bag on his back when he came out of the laundromat. Additionally, Mr. Spencer stated that he and Mr. Richard went back to his house after the robbery. While Ms. Dang did not identify him as the person who robbed her, Mr. Spencer’s own confession identifies himself as a principal in the offense of an armed robbery with the use of a firearm.
Further, Ms. Houston and Mr. Jacque both identified Mr. Spencer as one of the persons who robbed them of their vehicle on August 10, 2011. Mr. Jacque stated that Mr. Spencer was one of three men who approached him with a gun and took his keys and money from his pants pocket. Mr. Jacque testified that the three men took his truck after he refused to take them into his house. Mr. Jacque | ^indicated that he was able to identify the men even though they had t-shirts covering the bottom of their faces because the t-shirts kept falling down. He stated that he recognized Mr. Spencer from the neighborhood. Specifically, Mr. Jacque testified that he saw Mr. Spencer and his brother in the neighborhood the day after the robbery.
Ms. Houston testified that she saw the men when she came outside. She saw that one of them had a gun, and another ran after her when she ran back inside the house. Ms. Houston stated that she knew Mr. Spencer because he lived in the neighborhood and was friends with her son. She also testified that she saw Mr. Spencer and his brother in the neighborhood the next day.
Both Ms. Houston and Mr. Jacque identified Mr. Spencer in a photographic lineup and at trial as one of the perpetrators. They stated that they were not forced or coerced into making the identifications. Both testified that they were positive of their identifications. Mr. Jacque stated that the incident took several minutes, and he was able to clearly see Mr. Spencer’s face because the shirt covering his face kept falling down. Ms. Houston stated that she knew Mr. Spencer before the robbery because he was a friend of her son and had visited her home.
The testimony produced by the State shows no opportunity for misidentification *825 and supports Mr. Spencer’s convictions for armed robbery with a firearm. Mr. Spencer’s confession, in which he admits to his participation as a look out, is sufficient for a jury to find, beyond a reasonable doubt, that the defendant was guilty of the armed robbery of Ms. Dang. Likewise, the testimony | Mof Ms. Houston and Mr. Jac-que is sufficient to prove, beyond a reasonable doubt, that Mr. Spencer was guilty of the armed robbery of Mr. Jacque. Accordingly, we find this assignment of error is without merit.

EXCESSIVE SENTENCE

Mr. Spencer also contends that the sentences imposed by the trial court are excessive. A review of the record reflects Mr. Spencer did not file a motion to reconsider sentence and did not object to the sentence at the time it was imposed. La.C.Cr.P. art. 881.1 provides that the State or the defendant must make or file a motion to reconsider the sentence at or within thirty days of sentence to preserve an objection to the sentence for appellate review.
Additionally, this Court has repeatedly held that the failure to file a motion to reconsider sentence or to object in any way to the sentence at the time it is imposed precludes a defendant from raising a claim about his sentence on appeal. See State v. McCarthy, 12-0342 (La.App. 4 Cir. 3/27/13), 112 So.3d 394; State v. Jenkins, 09-1551 (La.App. 4 Cir. 6/30/10), 45 So.3d 173; State v. Stewart, 04-2219 (La.App. 4 Cir. 6/29/05), 909 So.2d 636; State v. Rodriguez, 00-0519 (La.App. 4 Cir. 2/14/01), 781 So.2d 640; State v. Tyler, 98-1667 (La.App. 4 Cir. 11/24/99), 749 So.2d 767.
Mr. Spencer argues,, however, that the failure to file a motion to reconsider sentence constituted ineffective assistance by his trial counsel. Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief, filed in the trial court where a full 115evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729, 737 (La.1984); State v. Johnson, 557 So.2d 1030, 1033 (La.App. 4 Cir.1990). “Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal.” State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992); State v. Seiss, 428 So.2d 444, 449 (La.1983). In this particular case, we find there is sufficient evidence to rule on the merits of the claim and address the issue on appeal.
The appellant’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The appellant must show that counsel’s performance was deficient and that the deficiency prejudiced the relator. Id., 466 U.S. at 687, 104 S.Ct. at 2064. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Id. Counsel’s deficient performance will have prejudiced the appellant if he shows that the errors were so serious as to deprive him of a fair trial. Id. To carry his burden, the appellant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id., 466 U.S. at 694, 104 S.Ct. at 2068. The appellant must make both showings to prove that counsel was so ineffective as to require reversal. Id.
*826 [)6On appeal, a claim of excessive sentencing is held to a high standard of review:
Excessive sentences are prohibited under the Eighth Amendment of the Unites States Constitution and La. Const, art. I, § 20. A sentence may be constitutionally excessive even when the sentence falls within the range permitted by statute. See State v. Sepulvado, 367 So.2d 762, 769 (La.1979). For a sentence to be found excessive, it must be “so grossly disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice.” State v. Cann, 471 So.2d 701, 703 (La.1985). The district court is granted broad sentencing discretion, and we will not overturn the district court’s judgment absent an abuse of that discretion. See State v. Walker, [20]00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462.
To determine whether the district court has abused its broad sentencing discretion, we first discern whether the court took into account the sentencing criteria listed in La.C.Cr.P. art. 894.1. See Sepulvado, 367 So.2d at 767-768. The district court, while not required to expound on all factors listed in Article 894.1, is required to take into account both aggravating and mitigating factors. See State v. Square, 433 So.2d 104, 110 (La.1983). Our purpose is not to enforce mechanical compliance by a sentencing judge, but to ensure that there is a factual basis for the sentence imposed. See State v. Batiste, [20]06-0875, p. 18 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820. If we find that the district court properly articulated its reasons for the defendant’s sentence, we then determine whether the defendant’s sentence was tailored to both the severity of his crime and his personal situation. See State v. Spencer, 374 So.2d 1195 (La.1979).
State v. Smith, 11-0664, p. 23-24 (La.App. 4 Cir. 1/30/13), 108 So.3d 376, 390, writ denied, 13-0472 (La.10/4/13), 122 So.3d 551.
Under La. R.S. 14:64(B), “[w]hoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.” Additionally, “[w]hen the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension 117of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.” La. R.S. 14:64.3(A).
In the present matter, the trial court sentenced Mr. Spencer to serve thirty-five years at hard labor without benefit of parole, probation or suspension on each count, said sentences to be served concurrently. The trial court then enhanced each sentence under La. R.S. 14:64.3 and sentenced Mr. Spencer to an additional five years at hard labor without benefit of probation, parole or suspension of sentence on each count, said sentences to be served consecutively to the initial thirty-five year sentence but concurrently to each other.
In State v. Smith, 01-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court stated that sentences of thirty-five to fifty years have been found to be acceptable for first offenders convicted of armed robbery, (citing State v. Augustine, 555 So.2d 1331, 1332 (La.1990), and State v. Thomas, 98-1144, p. 2 (La.10/9/98), 719 So.2d 49, 50). In State v. Lewis, 08-1308 (La.App. 3 Cir. 4/1/09), 16 So.3d 1, the court found that the defendant’s thirty-year sentence was within the accepted sentence range for first felony offenders con *827 victed of armed robbery. In Lewis, the defendant grabbed the victim, pulled a knife on him and made him take all the money out of the register. The defendant also took the victim’s cell phone and then rode off on his bike.
In State v. Hartwell, 03-1214 (La.App. 5 Cir. 1/27/04), 866 So.2d 899, the defendant was found guilty of two counts of armed robbery. The defendant was |issentenced to thirty-five years on each count of armed robbery with an additional five years on each count to be consecutively served to the armed robbery sentence for commission of the armed robbery with a firearm. On appeal, the defendant claimed that his sentences were constitutionally excessive because he was a first offender, and the victims were not hurt. Id., 03-1214, p. 11, 866 So.2d at 906. The court noted that the trial judge considered the defendant’s age of twenty-five years. Id. The court also relied upon the fact that the trial judge found that the defendant actions were horrible and that one of the victims testified that she was afraid she would die during the robbery. Id., 03-1214, p. 11-12, 866 So.2d at 906-907.
A sentence of forty years for a first armed robbery offender was affirmed in State v. Duncan, 09-232 (La.App. 5 Cir. 11/10/09), 28 So.3d 410. In Duncan, the court noted that both victims, while not physically hurt, testified that they were afraid for their lives and continued to be affected by the incident. Id., 09-232, p. 12, 28 So.3d at 417. One of the victims testified that he felt intimidated and feared for his life and that of his family. Id.
In the case at bar, the trial court, prior to sentencing, noted that Mr. Spencer was twenty years old. The trial court also noted that Mr. Spencer had a prior arrest for aggravated assault, and subsequent to the present case, he pled guilty to being in possession of contraband, specifically, a shank[4], while in prison. The trial court received victim impact testimony concerning Ms. Dang, which indicated that she 119was so affected by the robbery that she was unable to return to her family’s business in the Gentilly neighborhood. In imposing Mr. Spencer’s sentence, the trial court took into consideration the aggravating circumstances of the robberies and the effects upon the victims. The trial court recalled the testimony of Mr. Jacque in that Mr. Spencer and his co-perpetrators wanted him to take them into his house. Mr. Jacque refused, stating they would have to kill him first. The trial court also recounted the testimony of Ms. Houston who stated that she heard the men rattling the front door knob as they tried to get into her house. Further, the court expressed concern about the presence of children in the house and that the children were affected by seeing their parents traumatized by the incident.
We find that the trial court provided sufficient reasons for the sentences imposed. In light of the State v. Smith[5] and its progeny, the sentences imposed are not excessive. Therefore, despite the fact that Mr. Spencer’s trial counsel failed to file a motion to reconsider sentence, we find counsel’s failure to do so did not prejudice Mr. Spencer. Accordingly, we find this assignment of error is without merit.

DECREE

For reasons set forth above, we affirm Mr. Spencer’s convictions and sentences.
AFFIRMED.

. Shane Spencer is Mr. Spencer’s brother and co-defendant in the present matter. For ease of discussion, Shane Spencer is referred to herein as "Shane Spencer.”

. Mr. Jacque acknowledged that, at the time of trial, he was in prison for possession with the intent to distribute marijuana.

. Ms. Houston also called OnStar to have the vehicle shut off.

. "Shank” is prison slang for a homemade knife or sharp instrument.

. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1.