ROLAND L. BELSOME, Judge.
 

 |
 
 ¡statement of case
 

 On October 22, 2009, the State filed a bill of information charging the defendant with first degree robbery in violation of La. R.S. 14:64.1. On October 27, 2009, defendant appeared for arraignment; counsel was appointed to represent him, and he pled not guilty. Defense motions were heard on December 14, 2009. The district court denied Defendant’s motions to suppress the evidence and identification.
 

 The case proceeded to trial on February 25, 2010. The twelve-member jury found defendant guilty as charged. After the verdict, Defendant filed a motion for post verdict judgment of acquittal and a motion for new trial.
 

 On March 12, 2009, the trial court denied defendant’s post verdict motions. After Defendant waived all delays, the trial court sentenced him to three years imprisonment at hard labor. Defendant’s motion for appeal was granted.
 

 |2Piane Jennings testified that on August 9, 2009, at approximately 5:45 p.m., she left work at the Priestly Charter High School and was walking to her car which was parked near the intersection of Palmyra Street and South Prieur Street. Ms. Jennings was carrying a large stack of papers. She noticed someone behind her, which caused her to be concerned, given the hour of the day. Ms. Jennings opened the driver’s side door and threw her purse in. Then she opened the trunk and threw the stacks of papers inside.
 

 While she was putting the papers in the trunk, the individual approached and asked her for directions, and Ms. Jennings re
 
 *1161
 
 plied that she would retrieve a map from her car. Ms. Jennings opened the door, reached into the car, and retrieved the map. She opened the map and was looking at it when she heard the individual say something which she could not understand. She brought the map down and saw that he had his hand under his shirt. He told her, “I have a gun. Give me your keys. I will shoot you.” She looked down and could see that there something shaped like a gun under his shirt, which he was pointing at her.
 

 Once Ms. Jennings realized what was happening, she became frightened, but thought it was important to keep eye contact with the man, and quickly handed him the keys. The individual said, “Don’t make a sound. Don’t scream. Don’t do anything.” He told her to get into the car, but Ms. Jennings refused and began walking backwards. Although he threatened to shoot her, she continued to walk backwards until she reached the corner, at which time she turned around and ran as fast as she could into the school. Ms. Jennings testified that when she turned the corner, she heard the car start and the tires squeal.
 

 Once inside the school, Ms. Jennings started screaming for help, but no one was present, so she ran into the office and called 911. She met the police outside lathe building and advised the responding officers that the perpetrator was wearing a baggy black t-shirt, jeans, and gym shoes. Ms. Jennings also advised that the perpetrator was taller than she was, but not especially tall. She told the police that he did not have twists or dreads in his hair, and that it was short but not well kept, and that his complexion was brown.
 

 Ms. Jennings spoke with two district officers before Detective Krister Villen arrived. Ms. Jennings was in Detective Vil-len’s vehicle when a call came in over the radio advising that a vehicle matching the description of the victim’s automobile had been located. Ms. Jennings and Detective Villen immediately drove to the location, where she identified her car. The officers told her there was a purse in the adjacent trash can, which Ms. Jennings also identified as hers, but neither her keys nor her wallet was inside.
 

 Ms. Jennings was subsequently informed that the officers had a suspect and asked her if she was willing to see whether she could make an identification. She agreed, and the officers drove Ms. Jennings to where the suspect was located nearby. Ms. Jennings rode in the front seat of the car. When the vehicle reached the suspect, Ms. Jennings had the officers bring the suspect closer, and she rolled down the window. Ms. Jennings noticed that the man was not dressed in the same clothing as the robber, as he was wearing a white tank top; however, she also noticed that he was holding a black tee shirt. At that time, Ms. Jennings positively identified the suspect as the man who had robbed her at gunpoint, and stated that she was one hundred percent certain of her identification.
 

 After Ms. Jennings got home, she contacted the two banks where she had accounts and learned that cash advances totaling over $1,200.00 had been issued on her two missing debit cards.
 

 I ^Sergeant Ronnie Stevens testified that on the afternoon in question, he responded to a radio call of a robbery occurring in the 300 block of South Prieur Street. A description of the perpetrator and the vehicle was broadcast. In conjunction with other units, Sergeant Stevens began canvassing the area. As he was proceeding on Bien-ville Street, approximately twenty-five to thirty minutes after the call went out, he observed a subject roughly matching the description of the perpetrator cross Bien-
 
 *1162
 
 ville Street at its intersection with North Tonti Street. He observed that the subject was wearing blue jeans and had a black tee shirt draped across his shoulder. He also observed that the subject appeared to be looking around and that he was walking at a fast pace.
 

 As Sergeant Stevens crossed North Tonti Street, he looked down the block and noticed a black Toyota Canary matching the description of the victim’s automobile. Sergeant Stevens stopped his vehicle at the intersection and noted that the vehicle also had a Colorado license plate, as had been reported. Seeing that the vehicle was unoccupied and that there were no other persons in the immediate vicinity, Sergeant Stevens turned his attention back to the individual he had seen walking across Bienville Street, not only because his clothing fit the description provided of the perpetrator, but also because the subject had exhibited a quick pace and was looking around. Sergeant Stevens testified that his vehicle, because of the large searchlight, was easily identifiable as a police vehicle.
 

 As Sergeant Stevens continued to watch the individual, he witnessed him turn onto the next side street. Sergeant Stevens followed the individual and was able to stop and detain him at that time, after which he notified Detective Villen.
 

 | ¿Sergeant Stevens subsequently learned that the defendant lived in the 400 block of North Tonti Street, one block from where the vehicle was recovered.
 
 [1]
 

 Gwendolyn Kelly, Corey Kelly’s mother, testified that she learned her son had been arrested when he called her from Parish Prison. She stated that on the evening in question, he returned home from work, took a shower, and shaved. Normally, he drives his own car, but he was not able to get it started that day, either before or after work. Ms. Kelly further testified that after cleaning up, he left the house to go the store but did not immediately return, which caused her concern, because it was his custom to only leave the house briefly, as he wanted to be near the phone in case he was called in for an extra shift at work.
 

 ERRORS PATENT
 

 A review of the record for errors patent reveals a sentencing error. La. R.S. 14:64.1 requires that sentence be served without benefit of probation, parole or suspension of sentence. In this case, the trial court failed to include this restriction in the defendant’s sentence and thereby imposed an illegally lenient sentence. However, in instances where the statutory restrictions are not recited at sentencing, they are contained in the sentence, whether or not imposed by the sentencing court. La. R.S. 15:301.1 A;
 
 State v. Hall,
 
 2002-1098 (La.App. 4 Cir. 3/19/03), 843 So.2d 488. Because the statute is self-activating, however, the error requires no action by this Court.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 In the first assignment of error, Defendant contends the evidence was insufficient to establish his guilt beyond a reasonable doubt. With regard to | (¡claims that evidence is constitutionally insufficient to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987).
 

 The appellate court “may not disregard this duty simply because the record
 
 *1163
 
 contains evidence that tends to support each fact necessary to constitute the crime.”
 
 State v. Mussall,
 
 523 So.2d 1305, 1311 (La.1988);
 
 State v. Monds,
 
 91-0589, p. 4 (La.App. 4 Cir. 1/14/94), 631 So.2d 536, 539. Thus, if the reviewing court finds that no rational trier of fact, viewing all the evidence in a light favorable to the prosecution, could have found the defendant guilty beyond a reasonable doubt, the conviction cannot stand constitutional muster.
 
 Mussall,
 
 523 So.2d at 1309. When identity is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden to establish every element of the crime charged beyond a reasonable doubt.
 
 State v. Smith,
 
 430 So.2d 31, 45 (La.1983).
 

 It is well-settled that an appellate court “is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.”
 
 Mussall,
 
 523 So.2d at 1311;
 
 State v. Smith,
 
 600 So.2d 1319, 1324 (La.1992). As noted by the Louisiana Supreme Court, “the court is not to substitute its judgment of what the verdict should be for that of the jury, but at the same time the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.”
 
 Mussall,
 
 523 So.2d at 1311
 
 (citing
 
 2 Charles Alan Wright, Federal Practice & Procedure, Criminal 2d, Sec. 467, at 660-661
 
 &
 
 n. 23 (2d ed.1982)).
 

 |7The elements of first degree robbery are articulated in La. R.S. 14:64.1(A), which defines the crime as follows:
 

 First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by the use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
 

 In this case, although Defendant argues that the weight of the State’s evidence was insufficient to sustain his conviction, he does not directly challenge Ms. Jennings’ identification on grounds that he does not match the description provided; that Ms. Jennings was less than confident in her identification; or that circumstances prevented Ms. Jennings from observing her perpetrator during the commission of the crime. Rather, Defendant contends that the State’s proof was insufficient because no evidence was introduced which tied him the transactions involving Ms. Jennings’ debit cards. Defendant also argues that no stolen property was located on his person when apprehended, and that the overall circumstances of his apprehension were not indicative of guilt, noting there is nothing nefarious about walking in one’s own neighborhood. Defendant further argues that no evidence was introduced to establish whether his tee shirt was in fact dirty, as Ms. Jennings described.
 

 Defendant also suggests that he had already been arrested when Ms. Jennings’ debit cards were used. However, no evidence or testimony was offered which established when the transactions involving the victim’s debit cards occurred, so this point can neither be taken as pointing towards guilt or innocence.
 

 Despite the lack of evidence tying Defendant directly to the use of the victim’s debit cards, we find that the record demonstrates that the evidence was sufficient for a reasonable juror to determine Defendant’s guilt beyond a treasonable doubt. The evidence at trial established that Ms. Jennings positively identified Defendant as the perpetrator; that the Defendant was observed walking away from the proximate location of Ms. Jennings’ vehicle only forty minutes after the robbery occurred; and that Defendant’s clothing matched that worn by the perpetrator.
 

 
 *1164
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 In his final assignment of error, Defendant contends that the trial court erred in denying his motion for new trial pursuant to La.C.Cr.P. art. 851(1) and (5), which provide:
 

 The court, on motion of the defendant, shall grant a new trial whenever:
 

 (1) The verdict is contrary to the law and the evidence;
 

 [[Image here]]
 

 (5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
 

 Defendant argues that the trial erred in failing to afford him a contradictory hearing on his motion for new trial; however, the record reflects that Defendant submitted the motion without argument, and the record does not evidence that he intended to call any witnesses or submit any evidence, or that Defendant was prevented from doing same.
 

 Defendant’s argument with regard to the denial of his motion for new trial based upon La.C.Cr.P. art. 851(1), alleging that the verdict is contrary to the law and the evidence, is not subject to review on appeal.
 
 State v. Guillory,
 
 2010-1231, p. 3 (La.10/8/10), 45 So.3d 612, 614-615;
 
 State v. Snyder,
 
 98-1078, p. 37, n. 21 (La.4/14/99), 750 So.2d 832, 859,
 
 [2]
 
 cert.
 
 granted, judgment vacated on other grounds, Snyder v. Louisiana,
 
 545 U.S. 1137, 125 S.Ct. 2956, 162 L.Ed.2d 884 (2005);
 
 State v. Sparkman,
 
 2008-0472, p. 5 (La.App. 4 Cir. 1/28/09), 5 So.3d 891, 894.
 

 With respect to the trial court’s denial of Defendant’s motion for new trial on as set forth in La.C.Cr.P. art. 851(5), this ruling is reviewable under an abuse of discretion standard.
 
 Guillory,
 
 p. 6, 45 So.3d at 616. Considering the record in its entirety, we do not find that the ends of justice would be served by granting Defendant a new trial in this case. Accordingly, we do not find that the trial court abused its discretion in denying Defendant’s motion for new trial pursuant to La.C.Cr.P. art. 851(5).
 

 CONCLUSION
 

 For the foregoing reasons, Defendant’s conviction and sentence are hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The defendant's clothing items — a pair of blue jeans, a black t-shirt, sized 2x, and a belt — were confiscated and introduced at trial.
 

 [2]
 

 .
 

 In the instant case ... the denial of a motion for new trial based upon La.C.Cr.P. art. 851(1) is not subject to review on appeal.
 
 State v. Skelton,
 
 340 So.2d 256, 259 (La.1976) ("[W]e have uniformly held that a bill of exceptions reserved to the refusal of the trial judge to grant a motion for a new trial based on Article 851(1), relative to sufficiency of the evidence presents nothing for our review.”) (citations omitted);
 
 State v. Bartley,
 
 329 So.2d 431, 433 (La.1976) (“It is well established in Louisiana that an assignment of error reserved to the denial of a motion for a new trial alleging that the verdict is contrary to the law and the evidence presents nothing for appellate review.”) (citations omitted).
 

 State v. Snyder,
 
 1998-1078, p. 37 (La.4/14/99), 750 So.2d 832, 867, n. 21 (emphasis added).