ROLAND L. BELSOME, Judge.

I,STATEMENT OF THE CASE

On March 20, 2008, Eric D. Lewis[1] was indicted with one count each of first degree robbery and armed robbery with a firearm. Mr. Lewis plead not guilty at his arraignment on March 26, 2008.
On September 26, 2008, the court conducted a preliminary hearing to determine if probable cause existed and a hearing on Mr. Lewis’ motion to suppress identification. At the conclusion of the hearing, the court denied Mr. Lewis’ motion to suppress identification and found that sufficient probable cause existed to substantiate the charges.
On October 7 and 13, 2009, a jury trial was held. Following a two day jury trial, the jury found the defendant not guilty as to count one, first degree robbery, La.Rev. Stat. § 14:64.1. As to count two, the defendant was found guilty of the lesser charge of first degree robbery, La.Rev. Stat. § 14:64.1. On February 12, 2010, Mr. Lewis filed a motion for a new trial, which the court denied. On this same day, the trial court sentenced Mr. Lewis to serve forty years at hard labor with credit for time served. This appeal followed.
| STATEMENT OF THE FACTS
On January 6, 2008, around 7:35 a.m., New Orleans Police Department (“NOPD”) was dispatched to the Good Friends Bar, located at 740 Dauphine Street, to investigate an armed robbery. Officers Edward Davis and Mark Boyle arrived at the scene of the crime and then spoke to Lucas Abramson, the bartender and victim of the robbery.
Mr. Abramson testified that he was robbed while working at Good Friends Bar. He stated that on January 6, 2008, a gentleman walked in, put a note on the bar, and motioned down. Mr. Abramson stated that the note represented the person had a gun in a bag and requested that money be placed in the bag or he would “blow” Mr. Abramson away. Mr. Abram-son verbally responded to the request by asking the defendant if he was serious. The defendant responded by rearing up to Mr. Abramson and by raising the gun out of the bag. Mr. Abramson proceeded to *535 the cash register; however, the defendant told Mr. Abramson “put your hands up.” Mr. Abramson then removed the ten and twenty dollar bills from the register and gave them to the defendant who in turn bolted out of the door.
Detective Jason Giroir was assigned as the primary detective investigating the robbery. Detective Giroir testified that his role in the investigation was to determine who perpetrated the robbery at Good Friends Bar. Through the course of the investigation, officers learned from Mr. Abramson that Kirk Toups witnessed part of the robbery. Mr. Toups told police officers and also testified at trial that the bartender sent him to go get coffee the morning of the robbery. When Mr. Toups returned with the coffee, he saw Mr. Abramson hand over the money from the bar’s cash register to a man that appeared to be holding a weapon. Mr. |sToups testified he then saw the perpetrator run away from the bar. Mr. Toups was not able to provide officers with a positive identification of the perpetrator.
Detective Giroir testified that in addition to canvasing the crime scene, he viewed a surveillance video of the actual armed robbery. The video was confiscated and brought back to the police station and turned over to Central Evidence and Property for safekeeping until trial. In addition to the video, officers recovered the demand note left by the perpetrator. Detective Giroir testified that the demand note was not processed for fingerprints. He stated that he could not honestly state that the handwriting on the letter was Mr. Lewis’ handwriting.
A week following the robbery, NOPD contacted Mr. Abramson to potentially identify the perpetrator. Officer Lewis Labat and Detective Donald Haynes met up with Mr. Abramson in front of his house and presented him with a photographic lineup. Mr. Abramson testified that he picked person number six from the lineup before the detectives could finish giving him instructions on the identification process. Mr. Abramson then signed the back of Mr. Lewis’ picture in the photographic lineup to indicate that Mr. Lewis was the perpetrator of the robbery. Mr. Abramson testified that he was not forced, coerced, or threatened to pick from the lineup.
Officer Louis Labat, one of the officers responsible for developing Mr. Lewis as a suspect, testified at trial regarding the photographic lineup presented to Mr. Abramson. Officer Labat’s testimony corroborated Mr. Abramson’s account of the identification process. Officer Labat testified that he and Detective Haynes met Mr. Abramson the same day they received the photographic lineup. Officer Labat testified that he told Mr. Abramson that the police had a suspect and he was to see if he could or could not identify the perpetrator of the robbery. Officer 14Labat stated that Mr. Abramson immediately identified the defendant. At the hearing for Mr. Lewis’ motion to suppress, Officer Labat testified that Mr. Abramson got excited when he saw the defendant in the line-up. The detective also testified that he did not force or coerce Mr. Abramson to pick anyone out of the lineup. Further, Officer Labat did not indicate whether Mr. Abramson selected the correct person.
Based on the positive identification by Mr. Abramson, officers obtained a warrant for Mr. Lewis’ arrest. At the trial, Sergeant Eric Gillard, who was assigned to the Special Operations Division Warrant squad at the time this crime occurred, testified that he was responsible for apprehending Mr. Lewis. Sergeant Gillard testified that NOPD received information that there were outstanding warrants against Mr. Lewis. Sergeant Gillard subsequently *536 executed the warrant after receiving information that Mr. Lewis was at a hotel located on Tulane Avenue in New Orleans, Louisiana. Sergeant Gillard testified that he found Mr. Lewis at the hotel hiding in the bathtub but did not find any weapons or the clothes worn by the perpetrator at the time of the robbery. At the trial, Sergeant Gillard identified Mr. Lewis, while he sat next to his attorney, as the person he apprehended on April 18, 2008.

ERRORS PATENT

A review for errors patent reveals an error in defendant’s sentence for first degree robbery. A person convicted of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence. La.Rev.Stat. § 14:64.1.
|BIn this case, the trial court failed to state that defendant’s forty year sentence for first degree robbery was to be served without benefit of probation, parole or suspension of sentence. Accordingly, defendant’s sentence is illegally lenient. However, in instances where the statutory restrictions are not recited at sentencing, the restrictions are contained in the sentence, whether or not imposed by the sentencing court. La.Rev.Stat. § 15:301.1(A)[2]; State v. Hawkins, 11-0193, p. 4 (La.App. 4 Cir.11/16/11); 78 So.3d 293, 296. Hence, this Court need take no action to correct the trial court’s failure to specify that the defendant’s sentence be served without benefits. State v. Wyatt, 11-0219, p. 20 (La.App. 4 Cir.12/22/11); 83 So.3d 131, 143. The correction is statutorily effected. La.Rev.Stat. § 15:301.1(A).

ASSIGNMENT OF ERROR

In Mr. Lewis’ sole assignment of error, he contends that the evidence is insufficient to support his conviction, because the State failed to negate any reasonable probability of misidentifieation.

LAW AND ANALYSIS

The applicable standard of review for this Court when determining if the State presented sufficient evidence to support a conviction is controlled by the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Robinson, 11-0066, p. 8 (La.App. 4 Cir. 12/7/11); 81 So.3d 90, 95. Under the Jackson standard, this Court must determine whether, viewing the evidence in the light |fimost favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S.Ct. 2781; State v. Kelly 10-0853, p. 6 (La.App. 4 Cir.12/12/10); 54 So.3d 1159, 1162. The reviewing court may not discharge this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305, 1311 (La.1988). The reviewing court must consider the record as a whole, and if the court finds that no rational trier of fact could have found the defendant guilty beyond a reasonable *537 doubt, the conviction cannot be upheld. Id. at 1309.
In this case, Mr. Lewis was convicted of first degree robbery, a violation of La.Rev. Stat. § 14:64.1. To convict a defendant of first degree robbery the State must prove that the defendant took something of value by use of force or intimidation, or led the victim to reasonably believe that he was armed with a dangerous weapon. State v. Simmons, 99-1154, p. 4 (La.App. 4 Cir.12/6/00); 779 So.2d 856, 860, writ denied 801 So.2d 864, 2001-0767 (La.11/9/01). The thrust of Mr. Lewis’ contention on appeal is not that the elements of the offenses were not satisfied but rather that the State failed to negate the possibility of misidentification. Mr. Lewis argues that the victim of the robbery, Mr. Abramson, did not have the ability to make any identification because he could not even recognize Mr. Toups, the bar patron who got him coffee and stayed with him until the police arrived, on the morning of the robbery. Mr. Lewis also argues that the surveillance video does not show the perpetrator’s full face, and there is no physical evidence linking Mr. Lewis to the robbery. Accordingly, Mr. Lewis Largues that the State failed to negate any reasonable probability that he was the person who robbed Mr. Abramson at the Good Friends Bar.
When, as in this case, a defendant challenges identity, the State must negate any reasonable probability of mis-identification to satisfy its burden to establish every element of the crime beyond a reasonable doubt. State v. Kelly, 10-0853, p. 6 (La.App. 4 Cir. 12/12/10); 54 So.3d 1159, 1163 (citing State v. Smith, 430 So.2d 31, 45 (La.1983)). The standard for determining the reliability of identification or the substantial likelihood of misidentification is set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). State v. Stewart, 04-2219, p. 6 (La.App. 4 Cir. 6/29/05); 909 So.2d 636, 639, writ denied, 929 So.2d 1250 (La.6/2/06). In accordance with Manson, this Court considers five factors to determine the reliability of an identification: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of his or her prior description of the perpetrator; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. State v. Moody, 09-1394, p. 3 (La.App. 4 Cir. 4/21/10); 38 So.3d 451, 454, writ denied, 49 So.3d 887 (La.11/12/10) (citing Manson supra). Utilizing the Manson factors, places the focus on the victim’s visual identification of the perpetrator. Robinson, 11-0066 at p. 9, 81 So.3d at 96.
A positive identification by only one witness is sufficient to support a conviction. State v. Neal, 00-0674, p. 11 (La.6/29/01); 796 So.2d 649, 658. The fact-finder’s determination concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. State v. James, 09-1188, p. 4 (La.App. 4 Cir. 2/24/10); 32 So.3d 993, 996.
| Applying the Manson factors, we find the identification procedure did not produce the likelihood of misidentification. First, Mr. Abramson had ample opportunity to view Mr. Lewis during the robbery. A review of Mr. Abramson’s testimony and the surveillance video evidences that Mr. Abramson spent an adequate amount of time looking at Mr. Lewis’ face. The surveillance video shows that Mr. Abramson interacted with the perpetrator for two to three minutes during the course of the robbery, and that the perpetrator stood two to three feet away from him. At trial, Mr. Abramson testified that he had the opportunity to get a good look at the *538 perpetrator. Mr. Abramson stated that there was no doubt in his mind about who committed the robbery.
The second factor to consider is the witness’ degree of attention. Mr. Abram-son’s testimony shows that he was able to maintain a great deal of attention during the robbery, because Mr. Abramson questioned Mr. Lewis during the robbery. ' Mr. Abramson testified that when Mr. Lewis approached the bar, Mr. Lewis put a note on the bar. Mr. Abramson assumed that Mr. Lewis was. deaf and had placed his drink order on the note. Mr. Abramson approached Mr. Lewis and asked what he wanted to drink. Mr. Lewis then motioned for Mr. Abramson to read the note. Mr. Abramson verbally responded to the request in the note. The defendant then responded by raising the gun out of the bag to show Mr. Abramson he was serious about the robbery. The fact that Mr. Abramson was able to recall specific facts about what occurred further indicates that Mr. Abramson maintained a great deal of attention while the crime was being committed.
Applying the third Manson factor, the accuracy of the witness’ prior description of the perpetrator, we find that Mr. Abramson’s description of Mr. Lewis was consistent and unwavering. Mr. Abram-son’s initial physical description |nof the robber was that of a black male, five-nine to five-eleven in height, with large lips and a wide nose. Mr. Abramson’s physical description of Mr. Lewis was consistent with person number six on the photographic lineup. Thus, Mr. Abramson’s initial description of Mr. Lewis was accurate.
An evaluation of the evidence using the fourth Manson factor shows that. Mr. Abramson was certain when he identified Mr. Lewis as the robber. When officers presented the photographic lineup to Mr. Abramson, he immediately and positively identified person number six in the lineup, Mr. Lewis. Officer Labat also testified that Mr. Abramson easily picked Mr. Lewis out of the lineup. At trial, Mr. Abram-son confirmed that the same person sitting in the courtroom, Mr. Lewis, was number six from the photographic lineup. Mr. Abramson has consistently identified Mr. Lewis as the perpetrator of the robbery. Applying the fourth Manson factor, we find that Mr. Abramson’s identification of Mr. Lewis at trial and during the officers’ presentation of the lineup was clear and unambiguous.
Finally, weighing the evidence against the last Manson factor, we find that there was not a great deal of time between the crime and the confrontation. In this ease, the robbery occurred on January 6, 2008. On January 12, 2008, when police officers presented Mr. Abramson with a photographic lineup Mr. Lewis was identified as the robber. Six days elapsed between the time of the robbery and the photographic lineup presentation and identification.
Considering the Manson factors in relation to the testimony provided by the witnesses and the surveillance video, we find sufficient evidence was presented to the jury that the defendant was the perpetrator of the robbery. Mr. Abramson positively identified Mr. Lewis as the perpetrator. In fact, Detective Giroir testified that after reviewing the surveillance video he could positively say that Mr. |TnLewis committed the robbery. Detective Giroir stated the identification of Mr. Lewis as the perpetrator is accurate, because Mr. Lewis’ physical characteristics matched the person in the video. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State’s witnesses were credible and that Mr. Lewis was guilty of first degree robbery.

*539
DECREE

In conclusion, given the record before this Court, we affirm Eric D. Lewis’ conviction and sentence.
AFFIRMED

. Eric D. Lewis is also known as Rodney Atkins.

. La.Rev.Stat. § 15:301.1(A) provides:
When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.