STATE OF LOUISIANA     *     NO. 2022-K-0245

VERSUS     *

       **COURT OF APPEAL**

DAJUAN ALRIDGE     *

       **FOURTH CIRCUIT**

    *

       **STATE OF LOUISIANA**

* * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 495-802, SECTION "DIVISION G"
Judge Nandi Campbell,
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Paula A. Brown, Judge Pro Tempore Lynn M. Luker)



Jason Rogers Williams
District Attorney
Brad Scott
Assistant District Attorney
Orleans Parish District Attorney's Office
619 South White Street
New Orleans, LA 70119

      COUNSEL FOR STATE OF LOUISIANA/RELATOR



Jared Miller
Orleans Parish Public Defenders
2601 Tulane Avenue, Suite 700
New Orleans, LA 70119

      COUNSEL FOR DEFENDANT/REPSONDENT


                            **WRIT GRANTED;**
                         **JUDGMENT REVERSED**
                             **MAY 18, 2022**

Relator, the State of Louisiana (the "State"), seeks supervisory review of the district court's March 23, 2022 judgment, which granted Respondent's, Dajuan Alridge, motion to suppress identification by K.S.[1] ("motion to suppress"). For the reasons that follow, we grant Relator's writ application and reverse the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

On March 25, 2010, Defendant, Dajuan Alridge ("Defendant"), along with Dennis Lewis ("Lewis"), was indicted for the November 30, 2009 second degree murder of James McKenzie ("James"). On October 21, 2015, Defendant was found guilty as charged by a non-unanimous jury. On May 23, 2018, Defendant's conviction and sentence were affirmed by this Court. *See State v. Alridge,* 17-0231 (La. App. 4 Cir. 5/23/18), 249 So.3d 260. On January 8, 2019, the Louisiana Supreme Court denied Defendant's writ application. *See State v. Alridge,* 18-1046 (La. 1/8/19), 259 So.3d 1021. However, on April 27, 2020, the United States Supreme Court vacated the judgments of the state courts and remanded the matter

---

[1] Because K.S. was a minor at the time of the identification, he will be referred to by his initials to protect his identity. *See J.C. on Behalf of N.C. v. St. Bernard Par. Sch. Bd.*, 21-0111, p. 1, n. 2 (La. App. 4 Cir. 2/4/22), 2022 WL 336503 *1, *writ denied*, *J.C. on Behalf of N.C. v. St. Bernard Par. Sch. Bd.*, 22-00372 (La. 4/26/22), ___ So.3d ____, 2022 WL 1222776 (citation omitted).

1

to this Court "for further consideration in light of *Ramos v. Louisiana,* 590 U.S. ___, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020)." *Alridge v. Louisiana,* ___ U.S. ___, 140 S.Ct. 2710, 206 L.Ed.2d 848 (2020). On remand, this Court, given the non-unanimous guilty verdict, vacated Defendant's conviction and sentence and remanded the case to the district court. *See State v. Alridge,* 17-0231 (La. App. 4 Cir. 6/3/20), 302 So.3d 139.

After the case was remanded, on October 25, 2021, Defendant filed a motion to reopen the suppression of his identification.[2] The district court granted Defendant's motion on November 18, 2021, finding that the June 23, 2011 motion hearing "did not include a robust inquiry into the validity of the identification procedure and due to the Defendant being granted a new trial under *Ramos.*" Defendant's motion to suppress came for hearing on February 7, 2022. On March 25, 2022, the district court granted Defendant's motion to suppress and any subsequent identification that occurred afterwards.

The State's timely filed writ application followed.

## DISCUSSION

The State argues that the district court erred in suppressing K.S.'s identification of Defendant as one of the perpetrators on two grounds: (1) in finding that the photo lineup was suggestive; and (2) in finding that the identification was unreliable because of a substantial likelihood of misidentification.

---

[2] Before the first trial, Defendant filed his first motion to suppress, which the district court denied on June 23, 2011. At that time, Judge Byron C. Williams presided over Criminal District Court, Section G. Judge Nandi Campbell, elected to Criminal District Court, Section G, on November 3, 2020, is the presiding judge over this matter.

2

A defendant has the burden of proving the grounds of his motion to suppress evidence. *See* La. C.Cr.P. art. 703(D). Thus, "[a] defendant has the burden of showing that (1) an identification was suggestive and (2) the procedure resulted in the likelihood of misidentification." *Alridge*, 17-0231, p. 17, 249 So.3d at 275 (citing *State v. Holmes*, 05-1248, p. 6 (La. App. 4 Cir. 5/10/06), 931 So.2d 1157, 1161. "A trial court's ruling on the admissibility of an identification is entitled to great weight and must not be disturbed unless the trial court abused its discretion by so ruling." *Id.* (citing *State v. Dove*, 15-0783, p. 26 (La. App. 4 Cir. 5/4/16), 194 So.3d 92, 110, *writ denied*, 16-1081 (La. 6/29/17), 222 So.3d 48, *cert. denied*, ___ U.S. ____, 138 S.Ct. 1279, 1280, 200 L.Ed.2d 475 (2018)). With these precepts in mind, we will examine the State's assigned errors.

*Lineup Suggestiveness*

The State argues that the lineup was not suggestive, nor were there any new facts presented on the February 7, 2022 motion hearing sufficient to support the district court's ruling. Specifically, the State urges that the photograph of Defendant did not stand out from the filler photographs in the lineup and that the lack of pre-lineup admonition did not make the lineup suggestive. In response, Defendant argues that the composition of the lineup brought undue attention to him and that the lack of admonition contributed to the suggestiveness of the lineup.

At the February 7, 2022 hearing, New Orleans Police Detective John Duzac ("Det. Duzac") confirmed that the victim, James, went missing on November 30, 2009, and his dead body was later found in an abandoned home on December 5, 2009. The last person to see the victim alive was his five-year-old sibling, K.S., who reported that the victim left their home with friends and did not return. Upon learning that K.S. had seen the victim leave with friends, Det. Duzac scheduled an

appointment for K.S. to be interviewed at the Child Advocacy Center in the Children's Hospital, so that a forensic examiner could show K.S. two six-person photographic lineups. Det. Duzac explained that shortly after the victim's body was discovered, Lewis became a suspect in the murder investigation. Upon questioning, Lewis implicated Defendant in the murder and, thereafter, a warrant was issued for Defendant's arrest.

Child psychologist, Daniel Dooley ("Mr. Dooley"), interviewed K.S. at the Child Advocacy Center on December 14, 2009. A review of the videotaped interview reflects that K.S. was at home with James, the victim, when there was a knock on the door and James instructed K.S. to let the visitors into the house. K.S. identified the visitors as a boy named Dennis and another boy "with dreads." K.S. described the boy "with dreads" as having a reddish complexion, in contrast with Dennis whom K.S. described as "black." Without hesitation, K.S. identified Defendant as the boy who entered the home with Dennis then later left with Dennis, along with James. K.S. proceeded to draw a circle around Defendant's photograph.

Upon questioning regarding K.S.'s interview, Det. Duzac explained that by describing Defendant as having a red complexion, K.S. meant that the person was African-American, but with a lighter complexion. Det. Duzac also testified that when the victim left the house with Defendant and Lewis, K.S. was playing computer games.

Introduced into evidence, as Defense Exhibit 4 (four), was a copy of the New Orleans Police Department Manual ("the NOPD manual") regarding the identification of suspects, which was in effect at the time K.S. was shown the six-

person photographic lineups.  The pertinent provisions in the NOPD manual provided:

> 27.  When it is determined that a photograph is on file for a particular suspect, a minimum of six identification photographs, including that of the suspect, shall be shown to the victim or witness.  The photographs must be of the same type (all color, all black and white) and of the same size….
>
> 28.  Photographs shown shall be of persons of the same race having similar age and physical characteristics….

Det. Duzac confirmed that the above policy was in effect in 2009 when K.S. selected defendant's picture from a six-person photographic lineup and that said provisions were followed in connection with the lineup presented to K.S.

Dr. Jeffrey Neushchatz ("Dr. Neushchatz"), a professor at the University of Alabama in Huntsville, was accepted as an expert in eyewitness identification.  Dr. Neushchatz opined that ideally to have a fair lineup the following should take place:

> 1.  An admonition should be provided to the witness prior to his or her view of the lineup stating that the suspect may or may not be in the lineup;
> 2.  The person presenting the lineup to the witness should not know who the actual suspect is;
> 3.  There should be "fillers in the lineup," with the recommendation being "somewhere between five and eight fillers" and the suspect "should not unduly stand out…"; and
> 4.  The presenter should ask the witness how confident the witness is after making the identification.

Regarding the likelihood of misidentification, Dr. Neushchatz stated that children aged "three, four, sometimes five" generally do not remember matters as well as adults or older children.  Dr. Neushchatz continued that the longer a subject is able to view the suspect, the better his or her memory will be.  If a witness is distracted, this adversely affects his or her memory.  Dr. Neushchatz testified that the longer the time between when the suspect is viewed and when the identification

is made, the more susceptible it is to misidentification, and it is more difficult to identify a stranger as opposed to a person with whom one is acquainted.

The district court, on March 25, 2022, issued its judgment and reasons for judgment, granting Defendant's motion to suppress. In its reasons for judgment, the district court, relying on *U.S. v. Saunders,* 501 F.3d 384 (4th Cir. 2007),[3] found that:

> [T]he identification procedure in this case was [] imperssibly [sic] suggestive. First, the photographic lineup did not include filler photos that were similar to the Defendant. The six-photo lineup displayed to K.S. by Mr. Dooley only included two individuals wearing prison attire, an orange jumpsuit, while the remaining four fillers were depicted in civilian clothes. This unduly focused the five-year old witness's attention on the Defendant, because only the Defendant and one other filler were depicted in orange prion [sic] jumpsuits. Furthermore, the only other filler photo in the prison attire did not have the same dreadlock hairstyle as the Defendant.
>
> Next, like the procedure utilized in *Saunders,* the imperssibly [sic] suggestive composition of the photo lineup was exacerbated by the Detective's failure to give pre-lineup adminitons [sic]. . . . Here, Detective Duzac also failed to instruct the forensic interviewer to give the five-year old witness, K.S., a proper admonition statement being that the Defendant may not be in the lineup. Such failure likely suggested to K.S. that he must choose a photo, rendering identification procedure to be suggestive.

In *Saunders*, the U.S. Fourth Circuit Court of Appeals, in reviewing the district court's denial of the defendant's motion to suppress identification, found that the defendant's photograph "looked strikingly different from the five filler photos, considered as a group." *Id.* at 390. The *Saunders* Court reasoned that "Saunders's photo stood out sharply from the others in the array." *Id.* "The dark background and lack of overhead lighting in Saunders's photo distinguished it from the remaining five photos, all of which had light backgrounds and overhead

---

[3] Although the U.S. Fourth Circuit Court of Appeals found the identification impermissibly suggestive, it "was reliable under the circumstances." *Saunders*, 501 F.3d at 393.

lighting." *Id.* (citations omitted). The *Saunders* Court recognized that while "there may be differences in background and lighting among the various photos in an array, [] such differences do not automatically create impermissible suggestiveness." *Id.* Thus, "[t]he risk of suggestiveness comes when one photo stands out, as [it] did [in that case]." *Id.* The *Saunders* Court further espoused that the suggestive nature of the photo array was exacerbated by the failure of the police to take precautions and follow its own policy by instructing the witness that the array may not contain a photo of the person under investigation. *Saunders*, 501 F.3d at 391.

This Court, having discussed Defendant's photo lineup in his first appeal, explained:

> In the present case, the six-person photographic color lineup is on a single sheet of paper which contains two rows of three photographs. All of the photographs are the same size and shape and depict the head and upper chest of the subjects against a neutral color background. The subjects are African-American males of roughly the same age, skin tone, facial features, hair-styled in dreadlocks, and sporting light/sparse mustaches. Although Dajuan complains he is depicted in an orange jumpsuit, another man in the lineup has the same orange shirt/jumpsuit with a collar. Of the remaining four men, two are clothed in white t-shirts and the remaining two men are wearing shirts with black collars. Additionally, Dajuan's picture is positioned in the middle of the bottom row, between the picture of the man in an orange shirt/jumpsuit with a collar and the man with a black collar. We conclude Dajuan failed to prove the photographic line-up was unduly suggestive, and a review of the photographic line-up does not suggest a possibility of misidentification by K.S.

*Alridge*, 17-0231, pp. 17-18, 249 So.3d at 275-76.

While our original decision in *Alridge* regarding the photo lineup is not binding on this Court, it is persuasive. As such, we conclude Defendant failed to offer any additional evidence to show that the photographic lineup was

impermissibly suggestive.[4]  Moreover, the record shows that at the time of the 2009 photographic lineup, an admonition statement was not required under the NOPD manual then in effect, and the photographic lineup presented to K.S. was in accord with the pertinent NOPD manual guidelines.  Thus, unlike *Saunders*, the photo array was not exacerbated by the NOPD's failure to give an admonition, as the NOPD followed the procedures it had in place at the time of the identification.

Accordingly, we find the district court abused its discretion in finding the photographic lineup to be impermissibly suggestive.

*Identification Reliability*

The State, citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), argues that the new facts presented at the February 7, 2022 motion hearing were not sufficient to find that under all the circumstances there was a "substantial likelihood of irreparable misidentification."  Defendant counters that the new evidence adduced at the February 7, 2022 motion to suppress hearing supports the district court's conclusion to suppress the identification.

As discussed in detail, *supra*, new facts produced at the motion to suppress hearing, as set forth by the State, are as follows:

1. K.S.'s description of Defendant included his "red" skin tone;
2. K.S. was playing a computer game when his brother left the house with Defendant and Lewis;
3. Det. Duzac complied with the NOPD manual regarding photo lineups in effect at the time of the identification, which have now been updated after the NOPD was put under an independent police monitor; and
4. Expert witness Dr. Jeffrey Neuschatz testified regarding factors that could possibly make a child's identification unreliable.

---

[4] In *State v. Acevedo,* 21-164, p. 5 (La. App. 5 Cir. 5/19/21), 325 So.3d 1117, 1120-21, quoting *State v. Chester,* 19-363 (La. App. 5 Cir. 2/3/21), 314 So.3d 914 (citation omitted), the appellate court held that "a 'new trial is not a later stage of the prior trial' but rather a new and separate trial, the law of the case doctrine does not apply. Therefore, courts are not limited to prior rulings but rather may reconsider even identical issues previously considered."

This Court set forth the applicable law for the likelihood of misidentification in *Alridge*, 17-0213, pp. 18-19, (La. App. 4 Cir. 5/23/18), 249 So.3d 260, 276 (citing *State v. Shannon*, 11-0955, pp. 8-9 (La. App. 4 Cir. 9/19/12), 101 So.3d 67, 73):

> Even if the identification could be considered suggestive, it is the likelihood of misidentification that violates due process, not merely the suggestive identification procedure. *State v. Payne*, 04-828, pp. 4-5 (La. App. 5 Cir. 12/14/04), 892 So.2d 51, 53. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 113–14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Even a suggestive, out-of-court identification will be admissible if it is found reliable under the totality of circumstances. *State v. Guy*, 95-0899, pp. 9-10 (La. App. 4 Cir. 1/31/96), 669 So.2d 517, 523.
>
> In *Manson*, *supra*, the Court set forth a five-factor test to determine whether a suggestive identification is reliable, to-wit: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. *Id.*, 432 U.S. at 114-16, 97 S.Ct. 2243, citing *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In determining the likelihood of misidentification of a suspect, a court must look to the "totality of the circumstances" as informed by the five factors. *Neil*, 409 U.S. at 199, 93 S.Ct. 375. In evaluating the defendant's argument, the reviewing court may consider all pertinent evidence adduced at the trial and at a hearing on the motion to suppress the identification. *State v. Lewis*, 04-0227, p. 18 (La. App. 4 Cir. 9/29/04), 885 So.2d 641, 652. A trial court's determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Offray*, 00-0959, p. 5 (La. App. 4 Cir. 9/26/01), 797 So.2d 764, 769, citing *State v. Bickham*, 404 So.2d 929 (La. 1981).

In the case *sub judice*, the district court found that the identification was "likely unreliable because of the totality of K.S.'s interaction with the Defendant being significantly brief."[5] We disagree.

First, as to the opportunity for the witness to view the assailant at the time of the crime, the district court acknowledged that generally, the opportunity of a witness to view the defendant for two to three minutes is deemed sufficient. *See Manson,* 432 U.S. at 114; *see also State v. Lewis,* 11-0999, p. 8 (La. App. 4 Cir. 5/23/12), 95 So.3d 533, 537. In this case, K.S., during his Child Advocacy Center interview, said that he opened the door for Defendant and Lewis. Thus, he was not playing computer games at that time, thereby giving him ample opportunity to look at them. We find that this factor is not indicative of an unreliable identification.

Second, regarding the witness' degree of attention, the record is silent with respect to whether K.S. spoke to either Defendant or Lewis. The district court, in its reasons for judgment wrote that "K.S. did not speak with [Defendant]," but that information is not in the Child Advocacy Center interview with K.S., nor the trial transcript with K.S. provided in the record. During the Child Advocacy Center interview, K.S. said that he was the one who opened the door for Defendant and Lewis. The district court noted that Dr. Neushchatz's expert testimony provided that "divided attention subsequently leads to a less accurate memory." However, K.S.'s attention was not divided when he opened the door for Defendant and Lewis. Further, a review of K.S.'s Child Advocacy Center interview reflects that "K.S. was certain when he circled Dajuan's picture with a crayon and was

[5] Moreover, as the State notes in its writ application, the district court's finding that the identification was "likely unreliable" is not in accord with the law related to the admissibility of identification testimony set forth in *Manson v. Brathwaite,* 432 U.S. 98, 107, 97 S.Ct. 2243, 53 L.Ed.2d 140, wherein the Court provided that the alleged suggestive identification must give "rise to a **substantial** likelihood of **irreparable** misidentification [emphasis added]."

unequivocal in his identification of Dajuan." *Alridge,* 17-0231, p. 19, 249 So.3d at 276. Thus, the instant *Manson* factor does not support a finding of unreliability.

Next, we find that the third factor, the accuracy of the witness' prior description of the assailant, does not support a finding that the identification was unreliable. K.S. described Defendant as having "dreads" and a "red" complexion. A review of Defendant's mug shot reflects that K.S.'s description was accurate. The district court, however, focused on what was not described, citing *Manson* for the proposition that an identification is "more reliable" when the witness is able to provide a detailed description such as height, build, clothing and facial features such as high cheekbones. As this Court noted on direct appeal, K.S.'s description was "consistent" with defendant's picture in the photographic lineup. *See Id.*

The fourth factor, the level of certainty demonstrated by the witness, does not support a finding that the identification was unreliable. While the district court noted that Det. Duzac did not instruct Mr. Dooley to ask K.S. for a confidence statement, it is clear that from a review of the taped interview that K.S. identified Defendant within seconds. When Mr. Dooley showed K.S. the photographic lineup again, K.S. pointed to the Defendant's photograph a second time.

Finally, regarding the fifth factor, the length of time between the crime and the confrontation, the record reflects that K.S. identified Defendant two weeks after the murder. The district court found that two weeks weighed in favor of an unreliable identification because an identification is more reliable "[w]hen the witness has identified the defendant either shortly after the crime or within a week." *See Manson,* 432 U.S. at 115-16; *see also State v. Lewis,* 11-0999, p. 9 (La. App. 4 Cir. 5/23/12), 95 So.3d 533, 538. This Court previously found in *Alridge,*

11

17-0231, p. 19, 249 So.3d at 276, that, "K.S. identified [Defendant] from the lineup **only** two weeks after the murder," which was in line with this Court's precedent.[6]

In sum, we conclude the totality of the *Manson* factors do not reflect a substantial likelihood of misidentification, but rather support a finding of reliability. Accordingly, we find that the district court erred when it granted Defendant's motion to suppress.

## CONCLUSION

Based on the foregoing, we grant Relator's writ application and the judgment of the district court reversed.

**WRIT GRANTED;**
**JUDGMENT REVERSED**

---

[6] *See State v. Williams,* 10-1197, pp. 12-13 (La. App. 4 Cir. 5/25/11), 66 So.3d 1207, 1215 (approximate delay of two months between the crime and the photographic lineup did not render identification unreliable); *see State v. Sterling,* 96-1390, p. 5 (La. App. 4 Cir. 11/13/96, 684 So.2d 74, 78 (three-month lapse between the crime and the photographic lineup is not so long as to make the identification unreliable); s*ee also State v. Johnson,* 09-1393, p. 8 (La. App. 4 Cir. 7/29/10), 44 So.3d 876, 881 (identification coming thirteen days after the crime deemed reliable).